## WARBURTON *et al. v.* LAUMAN.

Where in a mortgage a lot was by mistake designated as eighteen instead of eight, and was correctly described in a subsequent mortgage, which was executed subject to the first with notice of the mistake; held that the first mortgage should attach to lot eight, and be regarded as senior to the subsequent mortgage.

In equity, mistakes in a deed will be corrected, as against subsequent purchasers with notice.

Notice to an acknowledged agent is notice to his principal.

Although contracts cannot be changed, they may be corrected so as to enforce the intention of the parties.

*In Equity. Appeal from Henry District Court.*

*Opinion by* KINNEY, J. Lauman filed a bill in the district court of Henry county, against Albert Button, *et al.*, to forclose a mortgage on lot 8, block 4, in the town of Salem in said county, which was executed by Button as is alleged by mistake on lot 18, block 4, instead of lot 8 as was intended by the mortgage, and claiming priority over a junior mortgage to Warburton, Rossiter & Co., on the lot intended to be conveyed to said Lauman, but which was subsequently mortgaged to said Warburton, Rossiter & Co.

The bill alleges that Button on the 8th of January 1848, became indebted to Lauman in the sum of 500,00, and on that date gave his note for the same, payable May 1, 1848, that he executed a mortgage by agreement to secure the payment of said note, intending to mortgage lot 8, block 4, in the town of Salem; that Button owned said lot at the time, and resided upon it as his homestead, and by mistake and accident the property was described as lot 18, in block 4, instead of lot 8 as it should have been; that there is no such lot as 18 in said town of Salem. That afterwards on the 10th of January 1849, said Button being indebted to Warburton, Rossiter & Co., in the sum of $912,50, and being called upon to give security for said debt by James Livingston acting as agent for said firm, said Button and wife executed a mortgage to said firm on said lot 8, block 4, subject to the mortgage of said Lauman as is expressly mentioned in the mortgage to them. That said Livingston had full notice of Lauman's debt and mortgage, supposing it to be on lot 8, block 4, and said Livingston accepted the mortgages to Warburton, Rossiter & Co. with such notice, and with the understanding that Lauman's mortgage was a prior lien. That all parties were ignorant of the mistake until both mortgages had been executed, and Lauman's recorded.

The answer of Button's admits the indebtedness to Lauman, giving the note of $500,00, and the security for the same by mortgage. That the consideration for the indebtedness was a stock of goods, and that Button proposed to give a mortgage on his brick house and lot as an inducement for the credit. That when he went to purchase said goods he took with him the title deeds by which he held the lot, which was known and described on the plat of said town as lot 8, in block 4. That respondent after the purchase of said goods executed his note, and the deed was given to one Fayrweather, with instructions to make out a mortgage from said respondent to said Lauman. That said mortgage was drawn up and acknowledged, and deposited for record. Respondent further states that on the 9th or 10th day of January 1849, one J. M. Livingston a clerk and agent of said Warburton, Rossiter & Co., applied to him to give said firm a mortgage on said lot 8, in block 4, to secure the debt due them, which respondent at first refused, on the ground of Lauman's prior claim, and informing said Livingston that he had previously executed a mortgage to said Lauman on said lot, being the brick house and lot occupied by respondent to secure the sum of five hundred dollars which was then due and unpaid, and that said house and lot were not of sufficient value to secure both debts. Respondent at length yielded to the solicitations of said Livingston, and on the 10th day of January 1849, executed the mortgage in said bill mentioned, alluding in said mortgage to Lauman's prior mortgage. That at the time of executing the mortgage to Lauman he did not, nor has not since owned any other real estate in said town except the lot aforesaid, and he informed said Livingston that lot 8, was the lot on which he resided.

Respondent further said that he did not discover the mistake made in the mortgage to Lauman until after he executed the one to Warburton, Rossiter & Co. and that he first learned of the error in the mortgage to Lauman by Livingston, informing respondent that he discovered

the mistake when he went to put his mortgage upon record.

The answer of Rossiter & Drake acknowledges ignorance of the transaction between Button and Lauman, and of the alleged mistake in the description of the property in the mortgage to Lauman. They admit the indebtedness to be correctly stated in the bill, admit the receiving of said mortgage to secure such indebtedness by Mr. Livingston their clerk and *agent*, but deny that they knew of any mortgage to complainant or had any knowledge of any equitable lien by him on lot eight, in block four. That they cannot tell precisely what knowledge Livingston may have had when he accepted the mortgage from Button to them. That they reside in St. Louis, and are personally ignorant of the matters charged in the bill. They insist that they are *bona fide* mortgagees without notice of any prior incumbrance. That if all the matters in the bill are true, that the complainant is not entitled to any relief as against them, but that the mortgage to Warburton, Rossiter & Co. is entitled to priority of satisfaction out of the lot of ground thereby mortgaged.

The cause was tried upon the bill, answers, exhibits and testimony, and a decree rendered in favor of Lauman for $579,00; also correcting the mistake in the mortgage from Button to him, so that it should be treated in all respects as a mortgage on lot eight, in block four; also that said mortgage from Button to Lauman have priority over the mortgage from Button to Warburton, Rossiter & Co. That the equity of redemption to said lot be foreclosed, and that the sheriff sell the same, and apply the proceeds thereof first to the payment of costs, second to the satisfaction of the debt to Lauman, and the residue, if any, to be paid into court, subject to the mortgage of said Warburton, Rossiter & Co.

We think this an equitable decree. Button confesses all the charges in the bill, and the correctness of the decree as against him cannot be questioned. Was the mortgage to Lauman entitled to priority over the one from But-

ton to Warburton, Rossiter & Co? If the respondents took their mortgage with a notice of Lauman's prior equitable right, the doctrine is well settled, that it must be held subject to such prior equity. That their acknowledged agent had such notice, the record and testimony abundantly establish. Livingston was not only informed of the fact by Button, but in the mortgage to the respondents, the prior mortgage is referred to in express terms. This recital in the mortgage of a prior incumbrance is of itself notice of such incumbrance. Livingston was acting in collecting and securing the demand against Button as the authorized and acknowledged agent of respondents W., R. & Co. His acts while within the sphere of his agency were the acts of his principals. Notice to him was notice to those for whom he was acting. But even if this were not so, the reference of a prior existing mortgage in the conveyance would be sufficient to charge the purchasers. 2 Powell on Mortgages, 573 and notes.

But notwithstanding this notice, and that respondents received the mortgage with the understanding and expectation that it was to be subject to the prior one to Lauman, yet as no such prior one did in fact exist on the lot mortgaged to Warburton, Rossiter & Co., therefore it is said the latter must take priority. This would be true if it had not been the *bona fide* intention of Button to have mortgaged lot eight, and Lauman to have received a mortgage on said lot and if the mistake in the description had not been entirely unintentional. But it is the especial prerogative of courts of equity to correct such mistakes, and not only to carry out the intention of the parties when fully understood, but to place them as near as possible in the position which they assumed to occupy at the time of the contract. Could Button have taken advantage of this mistake? if not, is Lauman's equity less, because his mortgagors with full notice of the equity attempt to do so. What did they expect to gain by the conveyance? Most certainly nothing more than a junior incumbrance. Would it be equitable to give them *more* at the

Warburton v. Lauman.

sacrifice of an equitable interest which beyond all question did exist at the time of their conveyance, and to which they had a direct reference at the time they received it. The error in the deed was not the fault of Button or Lauman, but the mistake of Fayrweather who drafted it.

As appears from the record, both parties supposed that the lot was numbered correctly in the mortgage, lot eight was clearly intended to have been conveyed. Button owned no other lot in Salem. Livingston first discovered the mistake in the mortgage to Lauman, and in a letter to Button which is made an exhibit in the case, speaks of the "mortgage on lot 18, instead of 8, as it should be." So that the mis description of the lot is not only fully shown to have been a mistake, but it is recognized and admitted as such by the agent of Warburton, Rossiter & Co.

Will courts of equity relieve such mistakes against subsequent purchasers for a valuable consideration if such purchaser had notice of such prior equitable incumbrance, and there is a mistake? The following authorities clearly establish the affirmative of this proposition. 1 Story's Eq. 179, 165; 2 Pow. on Mortgages 532, n. a. and e; 1 John. ch. 300; 3 Pier Williams 307; 1 Maddock ch. 65.

In the case of *Governeur* v. *Titus*, 6 Paige 347, the owner of the north east corner of a lot of land sold the same lot by mistake, described it as the north west corner of the lot (belonging to another person,) and the purchaser afterwards sold the same and made the same mistake in his deed. Subsequent to this conveyance a judgment was obtained vs. the first grantor and the land intended to have been conveyed purchased on such judgment by the judgment creditor, at which time the mistake in the deed was discovered, and the purchaser had notice thereof. A. the first grantor, and B. who had conveyed to C. with the same mistake in the deed, then joined in a new conveyance or deed of confirmation to C. in which the premises were correctly described, the alleged mistake be-

ing fully established, and the sheriff's deed not having been made to the purchaser, upon execution the court discharged the premises from the lien of the judgment, and granted a perpetual injunction against the claim of the purchaser under the judgment. Courts of equity will ever, unless the transaction is tainted with fraud, relieve all such errors of fact against subsequent purchasers with notice of antecedent intended conveyances. In the above case the judgment was obtained without notice, which became a lien upon the premises intended to have been conveyed but as the purchase upon execution was made with notice, the lien was properly set aside and the deed enjoined. "A written agreement may contain more or less than the parties intended, or something different from their intentions. These mistakes may happen either from carelessness on the part of the draftsman, or ignorance as to the legal or proper mode of executing the instrument; in either case when made out by proofs entirely satisfactory, equity will reform the contract so as to make it conformable to the precise intent of the parties."

While courts of equity will not make new contracts for parties, or change them from their original intention and purpose, yet they will reform and correct such contracts, not only as between the parties so as to carry out their intention, but as against subsequent purchasers with notice. It is the intention of the parties that will prevail in courts of chancery in preference to the mere act, when by that act the objects of the parties could not be attained.

By carrying out the intention of Button and Lauman, by reforming Lauman's mortgage (in order to do so) Warburton, Rossiter & Co. are placed in no worse position than they supposed at the time they obtained their deed. They secured their mortgage with the express understanding that it was to be subject to Lauman's prior equity, and as that equity actually existed, to give *theirs* priority would be, not only to defeat the intention of the parties in giving, and receiving it, but would be equivalent to making a new contract for them.

Pure equity cannot be meted out to Warburton, Rossiter & Co., except by giving priority to Lauman's incumbrance, as, if the mortgage to W., R. & Co. is to be first satisfied, they obtain more than they stipulated for in the deed from Button to them.

Hence by giving Lauman's mortgage priority, equal and exact justice is done to all parties. They are placed by such decree in the position they assumed to occupy at the time the respective conveyances were executed.

Decree affirmed.

*D. Rorer*, for appellants.

*Grimes & Starr* and *Morton*, for appellee.