**IOWA–ILLINOIS GAS AND ELECTRIC COMPANY, Iowa Public Service Company, Iowa Power and Light Company, Iowa Electric Light and Power Company, Iowa Southern Utilities Company, Interstate Power Company, and Union Electric Company, Appellees,**

v.

**IOWA STATE COMMERCE COMMISSION and Iowa Citizen/Labor Energy Coalition, Inc., Appellants.**

No. 68432.

Supreme Court of Iowa.

June 15, 1983.

James R. Maret, Commerce Counsel, and Alice J. Hyde, Asst. Commerce Counsel, Des Moines, for appellant Com'n.

Roger D. Colton, Legal Services Corp. of Iowa, Des Moines, for appellant Coalition.

John C. Cortesio, Jr., Cecil L. Goettsch, and Sheila K. Tipton-Frink of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for appellees.

Carroll Lucht, Iowa City, and Alan S. Miller, Washington, D.C., for Natural Resources Defense Council, amicus curiae.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, LARSON, and CARTER, JJ.

UHLENHOPP, Justice.

This appeal requires us to determine the extent of the authority of the Iowa State Commerce Commission to implement energy conservation measures. Seven public utility companies challenge a commission rule requiring them to serve as lenders of last resort to residential customers who implement such measures.

In 1978, Congress enacted the National Energy Conservation Policy Act (NECPA), P.L. 95–619, 92 Stat. 3209 (1978) (current version at 42 U.S.C. § 8201 et seq. (Supp. 1981)). The Act established a residential

conservation program. Under the program, each state may submit proposals for state-level conservation measures. For approval of a plan, each regulated utility must implement procedures informing residential customers of suggested energy conservation measures, the resulting cost savings, and the availability of arrangements to implement the measures. If a state does not submit a plan or fails to gain approval of a submitted plan, public utilities in the state are subject to the federal program guidelines. Carvalho, *Energy Conservation Through the State Public Utilities Commissions,* 3 Harv.Envtl.L.Rev. 160, 174 (1979).

As originally enacted NECPA prohibited public utilities from financing customers' conservation measures. An amendment to that Act, however, lifted this prohibition by permitting, but not requiring, public utilities to engage in financing. *Compare* P.L. 95–619 § 216, 92 Stat. 3217 (1978), *with* P.L. 96–294 § 546, 95 Stat. 743 (1980) (current version at 42 U.S.C. § 8217 (Supp.1981)). *See also* 1980 U.S.Code Cong. & Admin. News, 1743, 2189 ("Section 546 deletes the prohibition in NECPA against utility financing of energy conservation measures, thus permitting utilities to undertake lending programs. . . .").

Chapter 476 of the Iowa Code deals with "Public Utility Regulation." The first paragraph of section 476.1 provides:

The Iowa state commerce commission shall regulate the rates and services of public utilities to the extent and in the manner hereinafter provided.

The next five paragraphs define "public utility." In 1980 the General Assembly added the following paragraph at the end of the section:

The jurisdiction of the commission under this chapter shall include programs designed to promote the use of energy conservation strategies by rate or service-regulated gas and electric utilities. These programs shall be cost effective. The commission may initiate these programs as pilot projects to accumulate sufficient data to determine if the programs meet the requirements of this paragraph.

1980 Iowa Acts, ch. 1155, § 2. The Assembly also amended section 476.2, dealing with commission powers and rules, by adding this paragraph:

The commission shall promulgate rules concerning the use of energy conservation strategies by rate or service-regulated gas and electric utilities by July 1, 1981. The commission may prescribe appropriate rates for any approved energy conservation program. Nothing in this paragraph subjects the rates of municipal utilities to the regulatory authority of the commission.

1980 Iowa Acts, ch. 1155, § 3.

The commission then adopted rules, pursuant to this federal and state legislation, designated "Iowa Saves America's Valuable Energy" or "I–SAVE." 3 Iowa Admin. Bull. No. 11, p. 639 (1980), codified as 250 I.A.C. ch. 27. Under I–SAVE as originally adopted, covered utilities were permitted, but not required, to finance conservation measures for their customers. *See* 3 Iowa Admin.Bull. No. 11, p. 639 (1980) ("covered utilities . . . that finance program measures may so inform the customers").

Shortly after the I–SAVE rules were adopted, the commission proposed that utilities be *required* to finance the purchase and installation of I–SAVE measures by residential customers. 3 Iowa Admin.Bull. No. 12, p. 703 (1980). After soliciting comments on the proposed change from its own staff and the public, including the regulated utilities, the commission adopted the change in April 1981. The rule thus adopted states:

27.11(8). Utility financing. If requested to do so, a covered utility shall provide financing for energy conservation and renewable resource measures as a utility service. However, such financing shall be provided only in accordance with the following requirements:

a. Projects eligible for utility financing must be energy conservation measures as defined in subrule 27.2(9), or renewable resource measures as defined in subrule 27.2(16), and must have a payback period, calculated by an approved methodology as part of a home energy

audit under the I–SAVE plan, of seven years or less.

b. Financing shall be provided only to homeowners, or those purchasing a home under a contract of sale or by mortgage, for use in the residence of the borrower.

c. Borrowers must be unable to arrange financing with a bank, savings and loan, or other lending institution. If initial attempts by a covered utility or borrower to arrange financing with a lender are unsuccessful, the utility may attempt to arrange financing with other lenders before providing the financing itself. However, if the utility or borrower is unable to arrange financing under rule 27.11(476) within sixty days of the request for such arrangement, the utility shall be required to provide financing if the other requirements of subrule 27.11(8) are met.

d. Rates and terms for financing by covered utilities shall be consistent with prevailing bank rates and terms for financing, but in no event shall the rate of interest charged by a public utility exceed the rate of interest required by the commission on refunds paid to consumers by public utilities.

e. The aggregate of the principal amounts for any borrower shall not exceed $1,000.

f. Loans made by the utility shall be repaid with the consumer's periodic utility bill, consistent with the requirements of subrule 27.14(2).

All covered utilities shall file and maintain tariffs in conformance with this rule which set forth the terms and conditions for financing provided by public utilities.

These rules are intended to implement sections 476.1 and 476.8, The Code.

3 Iowa Admin.Bull. No. 22, p. 1390 (1980). The rule has been changed slightly to provide for renumbering (§ 27.11(8) to § 27.-9(8)) and to delete the words "renewable resource" which would include items such as active and passive solar heating, hot water systems, and wind energy systems. *See* 5 Iowa Admin.Bull. No. 4, pp. 249–56 (1982); 3 Iowa Admin.Bull. No. 11, p. 641 (1980) (current version of rule at 250 I.A.C. § 27.9(8)).

After this rule was adopted, the Administrative Rules Review Committee of the General Assembly filed an objection on May 21, 1981, that the rule is unreasonable. The utilities applied for rehearing before the commission, but the application was denied on May 22, 1981. They next requested the commission to issue a statement of reasons for and against the rule, pursuant to section 17A.4(1)(b) of the Code. The commission issued the statement on July 15, 1981.

The utilities then sought judicial review of the rule, pursuant to section 17A.19 of the Code. Iowa Citizen/Labor Energy Coalition, Inc. (IC/LEC) intervened in the appeal.

On judicial review the utilities allege the rule exceeds the commission's statutory authority, is unreasonable, and violates constitutional clauses. The commission, on the other hand, contends that it has statutory authority under sections 476.1, .2, and .8 of the Code to promulgate mandatory utility financing.

The district court found the commission exceeded its statutory authority in promulgating the rule and therefore did not address the issues of unreasonableness and unconstitutionality. The commission and IC/LEC appealed to this court.

I. *Scope of review.* We first consider two preliminary issues.

■ A. This court will make anew the determinations which the district court may make under section 17A.19 of the Code. *Temple v. Vermeer Manufacturing Co.,* 285 N.W.2d 157, 159 (Iowa 1979). In reviewing agency rule making, we can properly consider both the record made before the agency and before the district court. *Security Savings Bank v. Huston,* 293 N.W.2d 249, 251 (Iowa 1980); *Community Action Research Group v. Iowa State Commerce Comm'n,* 275 N.W.2d 217, 219 (1979).

■ B. An agency rule is presumed valid and the burden is on the party challenging it to demonstrate that a "rational agency" could not conclude the rule was within

the agency's delegated authority. *Milholin v. Vorhies,* 320 N.W.2d 552, 554 (1982); *Iowa Auto Dealers Ass'n v. Iowa Department of Revenue,* 301 N.W.2d 760, 762 (Iowa 1981); *Hiserote Homes, Inc. v. Riedemann,* 277 N.W.2d 911, 913 (Iowa 1979); *Davenport Community School District v. Iowa Civil Rights Comm'n,* 277 N.W.2d 907, 910 (Iowa 1979).

▮▮▮ Once the Administrative Rules Review Committee objects to the contested rule, however, the burden shifts to the agency in a judicial review proceeding to prove the validity of the rule. *Iowa Auto Dealers Ass'n,* 301 N.W.2d at 762; Iowa Code § 17A.4(4)(a) (1981). The committee objected that the rule was unreasonable. It did not object, however, with respect to the agency's delegated authority to promulgate such a rule. We find, therefore, that the district court correctly retained the burden on the utilities to prove promulgation of the rule was beyond the commission's statutory authority.

II. *Agency's statutory authority.* We pass then to the merits of the controversy.

▮▮▮ A. To be valid, a rule adopted by an agency must be within the scope of powers delegated to to it by statute. *Haesemeyer v. Mosher,* 308 N.W.2d 35, 37 (Iowa 1981); *Temple v. Vermeer Manufacturing Co.,* 285 N.W.2d 157, 159 (Iowa 1979); *Hiserote Homes, Inc. v. Riedemann,* 277 N.W.2d 911, 913 (Iowa 1979); *Davenport Community School Dist. v. Iowa Civil Rights Comm'n,* 277 N.W.2d 907, 910 (Iowa 1979); *Quaker Oats Co. v. Cedar Rapids Human Rights Comm'n,* 268 N.W.2d 862, 868 (Iowa 1978). The ultimate determination of whether an agency could have rationally concluded it was acting within its delegated powers is for the court. *Haesemeyer,* 308 N.W.2d at 37; *Iowa Department of Revenue v. Iowa Merit Employment Comm'n,* 243 N.W.2d 610, 615 (Iowa 1976); *Schmitt v. Iowa Department of Social Services,* 263 N.W.2d 739, 745 (Iowa 1978).

B. The commission finds authority to promulgate mandatory utility financing in the recent amendments to sections 476.1 and .2 of the Code. Section 476.1 now provides in part:

The jurisdiction of the commission under this chapter shall include programs designed to promote the use of energy conservation strategies by rate or service-regulated gas and electric utilities.

Section 476.2 now provides in part:

The commission shall promulgate rules concerning the use of energy conservation strategies by rate or service regulated gas and electric utilities by July 1, 1981.

We note the commission "*shall* include programs designed to promote the use of" and "*shall* promulgate rules concerning the use of" energy conservation strategies. (Emphasis added.) Section 4.1(36) of the Code provides that use of the word "shall" in a statute imposes a duty. Thus the commission has no discretion as to whether it will promote programs and promulgate rules relating to energy conservation; the legislature has mandated that action. *See Consolidated Freightways Corp. v. Nicholas,* 258 Iowa 115, 137 N.W.2d 900, 904 (Iowa 1965). But the legislature has not, by those directives, mandated the commission to *require* utility financing of conservation measures. Such commission authority, if it exists, must be implied from the statutory language the commission relies on.

Section 4.1(2) of the Code states that words and phrases "shall be construed according to the context and the approved usage of the language." We think the ordinary meaning of phrases such as "programs designed to promote" and "rules concerning the use of" suggest the commission is to encourage, influence, and provide incentives relating to energy conservation. But we find difficulty reading into this language authority *to require utility financing* of energy conservation.

The California Supreme Court faced a similar problem in *Southern California Gas Co. v. Public Utilities Comm'n,* 24 Cal.3d 653, 156 Cal.Rptr. 733, 596 P.2d 1149 (1979). The state commission proposed a rule requiring utility financing. The utilities challenged the proposal by pointing to provi-

sions of the California Home Insulation Assistance and Financing Act, which provides:

The commission shall permit any electrical or gas corporation to institute a home insulation assistance and financing program for its residential customers. . . .

Calif.Pub.Util.Code § 2782 (Deering 1979). Because the legislature had expressly *permitted* utility financing, the court refused to find an intent to allow the commission to institute *mandatory* financing:

Although we are mindful of the importance of energy conservation in today's society, we must nevertheless conclude that the Legislature has not yet bestowed upon the commission the power to mandate the institution of home insulation financing assistance programs.

24 Cal.3d at 661, 156 Cal.Rptr. at 737, 596 P.2d at 1153. *See also Re Residential Energy Conservation Policy Act of 1978* (Dist. Colum.Pub.Serv.Comm'n No. 743, 7/16/82), 48 Publ.Util.Rep. 4th 575 (commission refused to assume authority to *require* utility financing where statute allowed *permissive* utility financing).

The Iowa Code provisions relied on by the commission do not mention financing at all, let alone permit it, as have the other codes quoted from. *Cf. Rochester Gas & Electric Corp. v. Public Service Comm'n,* 71 App.Div.2d 185, 422 N.Y.S.2d 770 (1979) (applying N.Y.Pub.Serv.Law § 135–g (McKinney 1979) *requiring* utility financing); Ohio Rev.Code Ann. § 4933.021 (Baldwin Supp. 1978) (*requiring* utilities to be lenders of last resort up to $750). We find the Iowa commission does not have authority to require utility financing under the recent amendments to sections 476.1 and 476.2.

C. The commission also relies on portions of statutory language in sections 476.-1, .2, and .8 of the Iowa Code:

The Iowa state commerce commission shall regulate the rates and services of public utilities to the extent and in the manner hereinafter provided.

. . . .

The commission shall have broad general powers to effect the purposes of this chapter. . . .

. . . .

Every public utility is required to furnish reasonably adequate service and facilities.

The commission argues energy conservation is a "service" that necessarily must be provided by utilities to assure the adequacy of traditional energy services in the future; as such, the commission has authority to see to it such service is provided, including forcing utilities to finance conservation measures.

Regulation of utility services has traditionally included such items as rate-structure, method of providing energy sources, construction of new power plants, and customer relations. Requiring utilities to teach consumers energy efficiency may be within the scope of utility regulation, but requiring financing of the implementation of these measures casts the utility in an entirely different role—that of an involuntary lending institution. We think that if such a departure from the traditional function of utilities was intended by the General Assembly, it would have said so.

In *Southern California Gas,* the commission attempted to justify its proposed rule by relying on its broad statutory powers "to supervise and regulate every public utility in the State and may do all things . . . which are necessary and convenient in the exercise of such power and jurisdiction. . . ." 24 Cal.3d at 657, 156 Cal.Rptr. at 735, 596 P.2d at 1151. But the court stated:

The Legislature is given plenary power to confer other powers upon the commission. This plenary power, however, is subject to the limitation that the additional powers bestowed upon the commission must be "cognate and germane to the regulation of public utilities."

*Id.* Requiring utility financing was not found by the court to be within the domain of utility regulation. *Id.* at 660, 156 Cal. Rptr. at 736, 596 P.2d at 1153.

The District of Columbia Public Service Commission dealt with this problem in a

proceeding entitled *Re Residential Energy Conservation Policy Act of 1978* (Dist.Colum.Pub.Serv.Comm'n No. 743, 7/16/82), 48 Pub.Util.Rep. 4th 575. The commission concluded it had no authority to order utilities to provide direct loan financing of residential conservation measures. *Id.* at 584. The function of that commission is to "insure that every public utility doing business within the District of Columbia is required to furnish service and facilities reasonably safe and adequate and in all respects just and reasonable." D.C.Code Ann. § 43–402 (1981). But the commission found

> that a direct utility loan program is not a necessary and integral part of the utility services required ... and therefore is not a 'service' under the implied regulatory authority of the commission. If utilities are to be required to undertake the substantial burden of establishing direct financing programs ... there must be a clearer manifestation of the intent of the council of the District of Columbia or The Congress to grant the commission authority to do so.... For these reasons we find that the commission lacks authority to order a direct utility loan program.

48 P.U.R. 4th at 585.

We likewise find authority to require financing to be such a departure from traditional utilities regulation that it must be clearly manifested by legislative enactment. We agree with the district court that the commission does not have authority under its present powers to require utility financing. We intimate no opinion on any constitutional implications in compulsory utility financing by statute.

D. Intervenor urges us to consider certain provisions in chapter 93 of the Iowa Code relating to solar energy. The promulgated rule, however, has been amended to delete any portions regarding solar energy. We therefore find no need to consider chapter 93. Having found the commission acted outside its delegated authority, we also find no need to reach the utilities' challenges of unreasonableness and unconstitutionality.

AFFIRMED.