STATE OF NEBRASKA, DEPARTMENT OF ROADS, APPELLANT,
V. WORLD DIVERSIFIED, INC., ET AL., APPELLEES.
576 N.W. 2d 198

Filed March 27, 1998.   No. S-96-1017.

Don Stenberg, Attorney General, and K. Osi Onyekwuluje for appellant.

Jerold V. Fennell, of Domina & Copple, P.C., for appellee World Diversified.

WHITE, C.J., CAPORALE, WRIGHT, GERRARD, STEPHAN, and McCORMACK, JJ.

PER CURIAM.

This case presents the question of whether changes made to a sign constitute the "erection" of a new sign rather than "customary maintenance," pursuant to 410 Neb. Admin. Code, ch. 3, § 002.01E (1992). The appellees own and or operate a sign located at the Crossroads Mall in Omaha, Nebraska. In 1972, the Legislature passed Neb. Rev. Stat. § 39-1320.06 (Cum. Supp. 1972), now codified at Neb. Rev. Stat. § 39-215 (Cum. Supp. 1996), prohibiting the advertisement of products and services not located on the premises on which a sign is located. The appellees' sign would have been prohibited by the new statute, but it was allowed to remain under a grandfather clause in § 39-215. In 1985, the appellees converted the sign to an electronic format that was not in conformance with the regulations of the appellant, State of Nebraska, Department of Roads, because the sign advertised off-premises products and services. Arguing that a new sign had been erected and that the grandfather clause no longer applied, the department sought to enjoin the appellees from utilizing an electronic format to advertise products and services not located on the premises on which the sign is located. The district court determined that the change in format constituted a modernization of the sign and denied an injunction. We affirm.

## BACKGROUND

The department appeals the district court's denial of an injunction that would require the appellees to cease from advertising on their sign by electronic means products or services not available on the property. The facts of the case are largely stipulated to or undisputed by the parties.

The Crossroads area is zoned as commercial or industrial, and the land use is clearly established by law or ordinance as industrial or commercial. The sign is three-sided, and each face of the sign is rectangular in shape, measuring approximately 14 feet wide by 25 feet long. The messages on the sign provide advertising for the tenants of the mall and for their establishments' principal or accessory products and services. However, the sign also advertises products or services that are not located on the Crossroads property. The sign further provides public-service messages such as the time, date, and temperature. The owner of the sign receives compensation for locating the sign on the Crossroads property. The sign, located at the intersection of 72d and Dodge Streets in Omaha, is visible from U.S. Highway 6, a federal-aid primary highway that is subject to advertising control.

Prior to March 27, 1972, the sign did not display electronic messages. Rather, the sign had a marquee face that required the manual changing of letters and symbols. It also had a fixed panel with advertising above the marquee area. The sign did not contain and was not illuminated by flashing, intermittent, or moving lights. However, the marquee area of the sign was illuminated so it could be seen at night. The sign provided advertisements for products or services located both on and off the premises.

On March 27, 1972, Neb. Rev. Stat. §§ 39-1320 through 39-1320.11 (Cum. Supp. 1972), now codified at Neb. Rev. Stat. §§ 39-212 through 39-222 (Cum. Supp. 1996), regulating signs visible from the federal highways, went into effect, and the department promulgated regulations. The sign was in violation of these statutes and regulations because it was not an "on-premise" sign as defined by 410 Neb. Admin. Code, ch. 3, § 002.01J (1992). However, § 39-215 contains a grandfather provision that allows signs erected prior to the effective date of the

statute to remain in place as legal nonconforming signs. Under the department's regulations, such signs may not be moved or replaced, although they may be reasonably maintained.

In April 1985, the marquee section of the sign was removed and replaced by an electronic message display that utilized flashing, intermittent, or moving lights. The sign now changes its messages at reasonable intervals by an electronic process or remote control. Additional fixed-panel advertising was also added by reducing the size of the marquee area of the sign, covering the posts supporting the sign with modernized siding, and adding additional trim to the sign. However, the actual support pillars of the sign remained, the sign remained in the same location, and the overall size and shape did not change in any significant way.

The city of Omaha issued a permit for the sign in August 1984. On November 4, 1993, the city issued a clarification of the permit that identified the sign as a "legal non-conforming sign" under the city of Omaha zoning ordinances and regulations, because due to a change in zoning for the Crossroads area, the sign became in violation of certain spacing requirements.

The department filed this action in district court, alleging that the appellees had erected a sign in violation of § 39-215 and seeking an injunction to stop the appellees from advertising by electronic means products and services not located on the Crossroads property. The appellees filed answers denying the department's allegations and alleging that because the sign was in place before §§ 39-212 through 39-222 went into effect, it could remain in place under the grandfather clause in § 39-215.

At trial, an employee of the department testified that Nebraska could lose federal highway funds if it lacked an effective control program for outdoor advertising. The employee further testified that if the Crossroads sign were allowed to continue as is, many other signs would convert to advertising by electronic means. The employee also testified the sign would not have been in violation of any regulations if it had converted to its present electronic format but only advertised products located on the Crossroads premises. The employee agreed with the appellees that whether the sign advertises products available

on or off the premises does not change the nature of the sign in terms of when it is turned on or the hours during which it advertises.

The district court determined that the sign location, triangular configuration, height, overall size, and placement of supporting members had remained virtually the same, with the main difference in the sign being the change to electronic communications. The district court concluded that the change to electronic messages did not constitute an erection of a new sign, but, rather, was a modernization of the old sign with the basic use of the sign remaining the same. Thus, the district court concluded that the sign enjoyed grandfather rights under § 39-215, and the court denied the department's request for an injunction.

## ASSIGNMENTS OF ERROR

The department contends that the district court erred in (1) failing to find that the appellees erected and are maintaining an advertising sign in violation of state advertising laws and denying the department's request for an injunction and (2) granting the appellees' sign grandfather rights under the statute.

## STANDARD OF REVIEW

An action for injunction sounds in equity. *Omega Chem. Co. v. United Seeds*, 252 Neb. 137, 560 N.W.2d 820 (1997).

In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Mischke v. Mischke*, 253 Neb. 439, 571 N.W.2d 248 (1997).

An injunction is an extraordinary remedy and ordinarily should not be granted except in a clear case where there is actual and substantial injury. Such a remedy should not be granted unless the right is clear, the damage is irreparable, and the remedy at law is inadequate to prevent a failure of justice. *Omega Chem. Co., supra*; *Central Neb. Broadcasting v. Heartland Radio*, 251 Neb. 929, 560 N.W.2d 770 (1997).

## ANALYSIS

The department contends that when the sign was changed in 1985, the appellees lost any rights they had under the grandfather clause in § 39-215 to advertise off-premises products or services because a new sign was "erected." As a result, the department argues that the "new" sign violates department regulations regarding the lighting of signs because under the regulations, only an on-premises sign or a sign providing public-service information may advertise by the electronic means employed by the appellees' sign. The appellees respond that the sign was previously able to advertise off-premises products and services under § 39-215 and that because the changes made to the sign constitute only customary maintenance, the sign continues to be protected by the grandfather clause.

In 1965, Congress passed the federal Highway Beautification Act, and federal regulations were promulgated requiring the states to effectively regulate outdoor advertising structures within 660 feet of the primary right-of-way of any interstate or primary highway. The penalty for failure to comply is a loss of 10 percent of the state's federal highway appropriation. 23 U.S.C. § 131 (1994); 23 C.F.R. § 750.701 et seq. (1997). In 1972, in order to be in compliance with the federal statutes, the Nebraska Legislature passed L.B. 1181, codified at §§ 39-1320 through 39-1320.11, now found at §§ 39-212 through 39-222, prohibiting certain kinds of advertising that is visible from the National System of Interstate and Defense Highways.

Section 39-215 provides that "[e]xcept as provided in sections 39-212 to 39-222, the *erection or maintenance* of any advertising sign, display, or device which is visible from the main-traveled way of the Highway Beautification Control System is prohibited. On-premise signs . . . shall be permitted." (Emphasis supplied.)

The statute further describes the types of signs that are permissible in certain areas, such as in commercial or industrial areas. Section 39-215(3)(b)(iii) states that "[w]ithin the areas in which, according to sections 39-212 to 39-222, advertising signs will be permitted, such signs shall conform to standards and criteria as to height, width, spacing, and lighting as set forth in the rules and regulations of the department."

Section 39-215(3)(b)(vi) next provides that "[n]othing contained in such section shall be construed to require the removal of signs in zoned and unzoned commercial and industrial areas, lawfully in existence on March 27, 1972, which signs may under such sections remain and continue in place even if nonconforming."

The federal regulations promulgated by the U.S. Department of Transportation require that in order to continue to be protected under a grandfather clause, the sign "must remain substantially the same as it was on the effective date of the State law or regulations." 23 C.F.R. 750.707(d)(5). The federal regulations then require each state to "develop its own criteria to determine when customary maintenance ceases and a substantial change has occurred which would terminate nonconforming rights." *Id.*

The regulations promulgated by Nebraska's Department of Roads define an "on-premise" sign as a sign that

> consists solely of the name of the establishment; identifies the establishment's principal or accessory products or services offered on the property on which they are located. Any sign bringing in any type of compensation to the property owner for the location on which the sign is erected shall not be considered an on-premise sign.

410 Neb. Admin. Code, ch. 3, § 002.01J.

The regulations define "erect" as

> to construct, build, raise, assemble, place, affix, attach, create, paint, draw or in any other way bring into being or establish, but it shall not include any of the foregoing activities when performed as an incident to the change of an advertising message or the customary maintenance of the sign structure.

410 Neb. Admin. Code, ch. 3, § 002.01E.

"Nonconforming sign" is defined as "a sign which was lawfully erected, but which does not comply with the provisions of the State Law or State Rules and Regulations." 410 Neb. Admin. Code, ch. 3, § 002.01H (1992). The regulations further provide:

> Signs which contain or are illuminated by flashing, intermittent, or moving light or lights are prohibited except for the following signs:

002.08C1 Signs which change their message at reasonable intervals by electronic process or remote control giving public service information such as time, date, temperature, weather, or On-Premise Signs advertising goods or services available on the premises shall not contain or be illuminated by beacons, strobe lights or other bright flashing lights.

410 Neb. Admin. Code, ch. 3, § 002.08C (1992).

The parties do not dispute that the Crossroads sign was in existence on March 27, 1972; nor do the parties dispute that the sign was not an on-premises sign at that time because the sign advertised products and services not available on the Crossroads premises. Thus, the sign could not have been newly erected after the effective date of the statute on March 27 without being in violation of the statute. However, because of the grandfather clause in § 39-215, the sign was able to continue to remain in place, even though it was nonconforming due to the fact it advertised off-premises products or services.

The question of what constitutes a "substantial change" so that a "new" sign is erected is an issue of first impression for this court. However, other jurisdictions have addressed the issue. The majority of jurisdictions hold that a new sign is erected when it has been moved, its support poles have been removed and replaced, or the size and dimensions of the sign have changed. See, *Appalachian Poster Advertising Co. v. Harrington*, 120 N.C. App. 72, 460 S.E.2d 887 (1995), *rev'd* 343 N.C. 303, 469 S.E.2d 554 (1996) (new sign was erected when new cross braces were added, support poles were replaced, and sign was moved approximately 3 to 5 feet); *Indep. Stave Co. v. Hwy. & Transp. Com'n*, 748 S.W.2d 870 (Mo. App. 1988) (sign was not substantially same after increase in size of advertising panel by 224 square feet); *Park Outdoor Adv. Co. v. Com. Dept. of Transp.*, 86 Pa. Commw. 506, 485 A.2d 864 (1984) (new billboards erected when wood frame and two support posts were changed to metal frame and one support post); *Advertising Co. v. Bradshaw, Secretary of Transportation*, 48 N.C. App. 10, 268 S.E.2d 816 (1980) (new sign "erected" after old sign had blown down, when broken pole was splinted and another pole replaced); *White Adver., Etc. v. Fl. Dept. of*

*Transp.*, 364 So. 2d 104 (Fla. App. 1978) (when size and dimension of sign face and message were changed, alterations were too extensive to be customary maintenance or repair, and new sign was erected).

However, a slight change in location and other changes have been held to be maintenance of a sign rather than the erection of a new sign. For example, in *Rothrock v. Zoning Hearing Board of Whitehall Tp.*, 13 Pa. Commw. 440, 319 A.2d 432 (1974), a sign that existed prior to a zoning change was put into a new concrete base, the advertising text was changed, and an extra support pole was added. The sign was also moved by about 9 inches. Under the zoning ordinance at issue, nonconforming signs could continue to be maintained. The Commonwealth Court of Pennsylvania determined that the changes were de minimis and were a continuation or modernization of the old sign.

As 410 Neb. Admin. Code, ch. 3, § 002.01E, states, a change in the advertising message does not constitute the erection of a new sign. Thus, in *Royal Food Systems v. Hwy. & Transp. Com'n*, 876 S.W.2d 38 (Mo. App. 1994), the face of a sign was changed from reading "Texaco" to "Wendys" but the structure and support poles were left intact. The Missouri Court of Appeals concluded that the changes constituted a permissible change in the advertising message and that a new sign had not been erected due to the change.

The federal regulations leave each state to determine its own criteria of what constitutes "customary maintenance" as opposed to a "substantial change." The conclusion that the changes in the instant case constituted routine maintenance is supported by the department's definition of the term "erect." Under that definition, a new sign would have to be brought into being or established in order to conclude that a new sign had been "erected." Furthermore, activities incident to the change of an advertising message or customary maintenance cannot be considered the erection of a new sign.

In the instant case, the face of the sign was updated and additional trim was added. These updates occurred upon the original frame of the sign, and the sign remained in the same location on the same support posts. The overall size, dimensions,

and location of the sign did not change. Thus, under the definition of "erect," instead of a new sign's being brought into being, an old sign was updated to make it more modern. As in *Rothrock, supra,* the change from a marquee that required messages to be changed manually to a display on which the messages are controlled electronically is akin to a modernization or maintenance of the sign rather than the erection of a new sign. However, the department argues that because the changes cause the sign to violate the lighting regulations promulgated by the department, those changes cannot be considered customary maintenance. The department's contention is that 410 Neb. Admin. Code, ch. 3, § 002.08C, allowing signs to utilize moving lights in commercial areas, allows such lights only on either on-premises signs or signs that provide public-service information. The sign in the instant case is not an on-premises sign and does not provide solely public-service information. Thus, the sign violates § 002.08C. However, the sign would not violate the regulation if it refrained from advertising off-premises products or services.

The department's argument ignores the fact that the reason the sign was nonconforming was because it utilized off-premises advertising. It was the capacity of the sign to continue to advertise off-premises products and services that was protected by the grandfather clause in § 39-215. Thus, the change to an electronic system, which would otherwise be permissible if the sign was an on-premises sign, should not serve to destroy any protection under the grandfather clause, because it is the capacity to continue to carry off-premises advertising that is protected by the clause. As the district court stated, the overall use of the sign has remained the same.

We conclude that the conversion of the sign to an electronic format did not constitute the erection of a new sign and that the sign continues to be covered under the grandfather clause in § 39-215. Accordingly, the order of the district court is affirmed.

AFFIRMED.

CONNOLLY, J., participating on briefs.