MEREDITH OUTDOOR ADVERTISING, INC., Appellant,

v.

**IOWA DEPARTMENT OF TRANSPORTATION, OFFICE OF RIGHT OF WAY, Appellee.**

No. 01–0741.

Supreme Court of Iowa.

July 17, 2002.

Michael P. Mallaney and Andrew B. Howie of Hudson, Mallaney & Shindler, P.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, David A. Ferree, Special Assistant Attorney General, and Carolyn J. Olson, Assistant Attorney General, for appellee.

CADY, Justice.

Meredith Outdoor Advertising, Inc. (Meredith) appeals from a decision by the Iowa Department of Transportation (Department) revoking two permits for outdoor advertising signs located more than 660 feet from an interstate highway right-of-way. The Department found the two signs had been reconstructed or modified without first obtaining new permits from the department of transportation in violation of Iowa Administrative Code rule 761–117.6(5) (1999). Meredith contended the Department exceeded its rulemaking authority under Iowa Code chapter 306C (1999) in relying on rule 761—117.6(5) to cancel the permits. On judicial review, the district court upheld the Department's decision. On our review, we agree with the district court's conclusion that rule 761—117.6(5) was a valid exercise of the Department's rulemaking authority. We therefore affirm the decision of the district court.

## I. Background Facts and Proceedings.

Meredith is engaged in the business of outdoor advertising. In 1993, it purchased two signs or billboards from Montgomery Signs, Inc. The signs are located along Interstate 35 North in an agricultural zone, more than 660 feet from the interstate right-of-way. They were erected prior to July 1, 1972, when the Iowa legislature enacted the comprehensive Junkyard Beautification and Billboard Control Act of chapter 306C.

One sign is located in Story County. At the time the original owners applied for the requisite provisional permit, the sign had a wooden face eight feet above ground level, supported by five posts. The face was sixteen feet in height and sixty feet in width. After Meredith purchased the sign, it added four support posts, enlarged the dimensions to eighteen feet by sixty feet, and increased the height above ground level to fourteen feet.[1] Meredith did not apply for a new permit with the Department prior to implementing these changes.

The second sign is located in Hamilton County. The specifications of the sign listed in the application for the provisional permit mirrored those listed for the Story County sign. A severe windstorm extensively damaged the Hamilton County sign in 1998. Meredith subsequently repaired the sign. In doing so, it added six support posts, plywood for the face, and increased the dimensions to eighteen feet by sixty feet. It also raised the sign fourteen feet above ground level. Meredith did not apply for a permit before repairing this sign.

After conducting several field checks on the two signs, the Department determined the signs were improperly reconstructed or modified without a permit in violation of Iowa Code section 306C.19 and Iowa Administrative Code rule 761—117.6(5). On April 15, 1999, the Department notified Meredith it was canceling the two permits.

Meredith appealed. The Department requested a contested case hearing pursuant to rule 761—13.3(1). Following the hearing, an administrative law judge issued a written decision overruling the Department's revocation. *See id.* r. 761—13.6. The administrative law judge invalidated the rule relied upon by the Department after finding chapter 306C did not

---

**1.** Although Meredith concedes it added the support posts, it contends the current dimensions existed at the time of purchase. However, Meredith failed to review a copy of the provisional permit prior to the purchase. Nevertheless, it is not important to determine the party responsible for changing the dimensions. Moreover, as we later note, the addition of support posts alone necessitates an application for a new permit.

expressly delegate rulemaking authority to the Department for outdoor advertising devices beyond 660 feet from a highway right-of-way.

The Department appealed. Two days following the issuance of the decision by the administrative law judge, the Department served notice of appeal on Steven B. Westvold. Westvold was the beautification administrator of the department's office of right of way division, and was responsible for administering the department's outdoor advertising device program. He was authorized to accept service of a notice of appeal regarding a permit revocation of an outdoor advertising device on behalf of the director of the department's office of right of way. Westvold promptly forwarded the notice of appeal to the director of the department of transportation. *See id.* r. 761—13.7(4) (notice of appeal must be forwarded to department director).

Meredith moved to dismiss the intra-agency appeal. It contended the Department should have served the notice of appeal on William E. McGuire, the acting director of the department's office of right of way. *See id.* r. 761—13.7(3) (Appeal must be filed with the *"director* of the office or division which administers the matter being contested." (Emphasis added.)). Meredith argued the appeal was required to be dismissed for lack of compliance with the administrative procedural rules and for failure to timely file an intra-agency appeal.

The reviewing officer denied Meredith's motion to dismiss. Additionally, the officer reversed the administrative law judge's decision and reinstated the Department's decision to revoke the two permits. The officer determined several sections of the Iowa Code authorized the Department to regulate outdoor advertising devices under chapter 306C.

Meredith petitioned for judicial review. It raised three issues: (1) improper service, (2) lack of rulemaking authority, and (3) unconstitutionality of rule 761—117.6(5). The district court denied Meredith's first two claims on grounds similar to those relied on by the reviewing officer. Although the court found Meredith had waived the constitutional challenge, it deemed the argument without merit.

■ Meredith appeals. It reasserts the same three issues presented to the district court in the judicial review proceedings.[2]

## II. Standard of Review.

■ Our review of a district court's decision on judicial review is for errors at law. *Al Khattat v. Eng'g & Land Surveying Examining Bd.,* 644 N.W.2d 18, 23 (Iowa 2002). We are guided by the standards of section 17A.19(8) in determining whether the district court applied the law correctly. *Id.* As section 17A.19(8) explains, we uphold the action of the agency as long as it is supported by substantial evidence in the record, and the agency did not act capriciously, unreasonably, or arbitrarily. *Id.* We consider the record before both the agency and the district court when reviewing the promulgation of an administrative rule. *Iowa–Ill. Gas & Elec. Co. v. Iowa State Commerce Comm'n,* 334 N.W.2d 748, 751 (Iowa 1983). In doing so, we defer to the agency's interpretation if

---

**2.** We need not determine whether rule 761—117.6(5) is unconstitutionally vague. In its brief, Meredith merely raised this argument in one sentence at the end of its statement of the case. No arguments, case law, or other authorities were advanced in support of this issue. We therefore find Meredith waived this challenge. Iowa R.App. P. 6.14(1)(*c* ) ("Failure in the brief to state, to argue or to cite authority in support of an issue may be deemed waiver of that issue.").

the rule falls within an area of the agency's expertise. *Al–Khattat,* 644 N.W.2d at 23.

## III. Service of Notice of Appeal.

We first address Meredith's claim that the Department improperly served the notice of appeal. If we agree with this contention, the reviewing officer had no jurisdiction over the intra-agency appeal, and our analysis would end here. Contrary to Meredith's belief, we conclude the Department properly effectuated service of process under department regulations.

Iowa Administrative Code rule 761—13.7 governs agency appeals of the department's decisions. Specifically, if a person wishes to appeal the decision of an administrative law judge to a reviewing officer, a written appeal must be submitted to "the director of the office or division which administers the matter being contested" within twenty days of the decision. *Id.* r. 761—13.7(3).

Meredith first contends rule 761—117.2(2) directs all appeals of decisions involving permit revocations to be filed with the director of the department's office of right of way. Yet, a review of this rule reveals that it does not pertain to appeals, but simply informs those who wish to contact the department about general matters of the proper address to do so. *See id.* r. 761—117.2(2) (*"Inquiries, requests for forms, and applications regarding this chapter* shall be directed to Advertising Control Section, Office of Right of Way . . . ." (Emphasis added.)).

On the other hand, rule 761—13.7(3) specifically applies to appeals. It directs the service of notice on "the director of the office or *division which administers the matter*" involved in the appeal. (Emphasis added.) As beautification administrator, Westvold was responsible for overseeing the highway beautification program, which was also located within the office of right of way. Meredith's permits were revoked for failing to comply with the regulations of the beautification act. Thus, the Department could have reasonably concluded Westvold was the proper party to serve under rule 761—13.7(3).

Even if the Department was required to serve McGuire in his capacity as department director under the rule, we still find service was properly effectuated. We have long recognized the general rule that notice to an agent is notice to a principal if the agent was acting within his duties in accepting service. *See Warburton v. Lauman,* 2 Greene 420, 424, 1850 WL 140, at *3 (Iowa 1850) ("His acts while within the sphere of his agency were the acts of his principals. Notice to him was notice to those for whom he was acting."); *see also Tonelli v. United States,* 60 F.3d 492, 495 (8th Cir.1995) ("[N]otice to an agent is effective if the agent has a duty to receive that knowledge and report it to the principal."); *Vermeer v. Sneller,* 190 N.W.2d 389, 393 (Iowa 1971) ("[T]he principal is chargeable with . . . notice to his agent received while the agent is acting as such within the scope of his authority . . . ."). Thus, if notice must be delivered to a particular officer listed by statute, notice to a designated representative of the officer should normally be sufficient. *Vermeer,* 190 N.W.2d at 394. Clearly, the record demonstrated Westvold was acting as an authorized agent of the department in accepting service of the notice of appeal. *See Warburton,* 2 Greene at 424, 1850 WL 140, at *3. Consequently, we impute the knowledge of notice to McGuire. *See Vermeer,* 190 N.W.2d at 393.

In so concluding, we do not believe we are offending general principles of fairness. *See id.* at 395. Meredith does not contend it was prejudiced or deprived

of the ability to adequately conduct an investigation. *See id.* at 394. Nor would we seriously entertain such a contention. The authority to receive notice is a mere ministerial task that can easily be delegated to an agent without contravening the concept of fairness. *Id.*

■ Furthermore, we believe this holding furthers the purpose of the department's appeal procedures to provide an orderly and efficient procedure for filing and processing appeals, as well as to ensure all relevant parties receive proper notice. *See id.* (we must keep in mind the objective of the notice provisions). Notice was forwarded to and received by the department director pursuant to rule 761—13.7(4). We have a long-standing tradition of requiring only substantial compliance with a statutory notice provision, particularly when a strict construction would not further the regulation's purpose. *See Vermeer*, 190 N.W.2d at 394. Accordingly, we conclude service on a designated agent under the facts of this case complies with rule 761—13.7(3).

## IV. Overview of Outdoor Advertising Device Regulation.

In 1972 the Iowa legislature enacted chapter 306C in response to the federal Highway Beautification Act, 23 U.S.C. § 131 (1965), which governed outdoor advertising signs along highways. In promulgating section 131, Congress sought to preserve the aesthetic natural beauty of our nation's landscapes for the traveling public. *Id.* § 131(a). Furthermore, by regulating "the erection and maintenance of outdoor advertising signs," Congress intended "to protect the public investment in such highways[ ][and] to promote the safety and recreational value of public travel." *Id.* Our legislature possessed similar intent in creating our own advertising sign regulation, but most likely also had financial

concerns in mind. *See Iowa Dep't of Transp. v. Neb.-Iowa Supply Co.*, 272 N.W.2d 6, 13 (Iowa 1978), *overruled on other grounds by Estate of Grossman v. McCreary*, 373 N.W.2d 113 (Iowa 1985). The failure of a state to adopt statutory standards resembling the federal mandates of the Highway Beautification Act results in the loss of a percentage of the apportionment of federal highway funds ordinarily received by a particular state. *See* 42 U.S.C. § 131(b) ("shall be reduced by amounts equal to 10 per centum of the amounts which would otherwise be apportioned to such State"); 40 C.J.S. *Highways* § 233(a), at 82 (1991).

In general, the Highway Beautification Act prohibits advertising signs within a specified distance from the highway right-of-way, in addition to signs outside of the specified distance that are visible from the main traveled way of the highway system and were constructed for the purpose of conveying an advertising message to the general public. 40 C.J.S. *Highways* § 233(b), at 82. Although a state may impose more stringent limitations than those delineated in the federal highway act, a state may not establish more lenient restrictions. *See id.* § 233(a), at 82.

Iowa has two separate statutes regulating the erection and maintenance of advertising billboards. Chapter 306B concerns only signs located within 660 feet of an interstate highway's right-of-way, while chapter 306C regulates all advertising signs. Because the two signs in this case are more than 660 feet from the right-of-way, chapter 306C guides our analysis.

Section 306C.12 prohibits the construction and reconstruction of an advertising device located more than 660 feet from the highway right-of-way "if it is visible from the main-traveled way of any interstate or primary highway." Before a sign may be constructed, a permit must be obtained

from the department. Iowa Code § 306C.12; *id.* § 306C.18(2); Iowa Admin. Code r. 761—117.5(5). The permit application must include a description of the proposed location and the sign's dimensions. Iowa Code § 306C.18(1). However, signs erected prior to the passage of chapter 306C were permitted to legally remain in existence despite their nonconformance to the new rules. Iowa Admin. Code r. 761—117.5(2). The owners of the "grandfathered" signs were only required to obtain a provisional permit. Iowa Code § 306C.18(2); Iowa Admin. Code r. 761—117.6(3)(b). These billboards are commonly referred to as nonconforming signs. Iowa Admin. Code r. 761—117.1 (" 'Nonconforming sign' means an advertising device that was lawfully erected and continues to be lawfully maintained."); 40 C.J.S. *Highways* § 240, at 90 ("A 'nonconforming sign' is a sign erected in conformance with the law as it existed at the time of its erection which was subsequently not in compliance because of a change in the law.").

Furthermore, a sign owner must obtain a new permit before it undertakes reconstruction or modification of the existing sign. Iowa Admin. Code r. 761—117.6(5). Thus, a reconstructed or modified sign is subject to the same regulations as a sign owner seeking an initial permit for the erection of a new sign. *Id.* r. 761—117.6(5)(*b* ). A sign is deemed reconstructed if a repair exceeds sixty percent of the total replacement cost. Iowa Code § 306C.10(15). On the other hand, the department has delineated several examples of modifications under the regulations, including changes in dimensions, sign face, and number of support posts. Iowa Admin. Code r. 761—117.1. Yet, a mere change in advertising message does not constitute a modification. *Id.* Moreover, a sign owner need not seek a new permit if the change or addition is simply incidental to customary sign maintenance. *Id.* r. 761—117.1. For example, if the owner is merely attempting to maintain the sign in a state of good repair, this is customary maintenance not necessitating a permit. *See* Iowa Code § 306C.10(7) (" 'Erect' means to construct, reconstruct, build, raise ... [but not] when performed incidental to the customary maintenance of an advertising device."); *id.* § 306C.10(11) (" 'Maintain' means to cause to remain in a state of good repair but does not include reconstruction."). Noncompliance with the permit provisions results in the revocation of the previously issued permit and mandatory sign removal. *Id.* § 306C.19; Iowa Admin. Code r. 761—117.6(5)(*c* ); *see Iowa Dep't of Transp.*, 272 N.W.2d at 13 ("[U]pon noncompliance with the permit requirements ... the[ ] billboards become subject to removal."); 40 C.J.S. *Highways* § 239, at 89 (sign violating permit requirements of governing statutes and applicable regulations promulgated by department is subject to removal and corresponding permit revocation).

## V. Rulemaking Authority under Chapter 306C.

Meredith contends the Department exceeded its statutory authority by promulgating a rule requiring the department to revoke permits granted under chapter 306C when a sign owner reconstructs or modifies a nonconforming sign without first seeking a new permit. Meredith points to section 306B.3, which specifically grants authority to the department to "promulgate and enforce rules ... governing the erection, maintenance, and frequency of advertising devices within six hundred sixty feet of the edge of the right of way." In short, Meredith claims that because there is no similar provision in chapter 306C, the department does not have the authority to implement rules gov-

erning signs beyond 660 feet from the right of way.

■ Although chapter 306C does not in fact expressly grant rulemaking authority, we find that several other statutory sections inherently provide the department with sufficient authority to enact regulations controlling the maintenance of nonconforming signs. Sections 306C.18(3) and 306C.19 require sign owners such as Meredith to follow department rules or be subject to removal. Additional sections provide general authority to the department to adopt such rules deemed necessary to carry out its duties. *See* Iowa Code § 307.12(9) (duty of department director to enact rules); *id.* § 307A.2(13) (department must enact rules needed to exercise its powers); *see also* Iowa Admin. Code r. 761—117.3 (department regulates advertising signs in accordance with the rules); *id.* r. 761—117.2(1) (these rules apply to all advertising signs visible from highway, subject to exceptions not involved here). Considering these provisions, we conclude the legislature intended to provide the department with the power to fill in any gaps within chapter 306C by enacting administrative rules. *See Iowa–Ill. Gas & Elec. Co.*, 334 N.W.2d at 752 (a finding that the department is responsible for implementing rules is consistent with the legislature's intent); *Haesemeyer v. Mosher*, 308 N.W.2d 35, 38 (Iowa 1981) (looking to general rulemaking provisions); *Peoples' Gas & Elec. Co. v. State Tax Comm'n*, 238 Iowa 1369, 1376, 28 N.W.2d 799, 804 (1947) (referencing general statutory provision empowering commission to adopt any rules necessary to effectuate commission's purposes).

■ An agency rule is generally presumed valid unless the party challenging the rule proves "a 'rational agency' could not conclude the rule was within its delegated authority." *Milholin v. Vorhies,*

320 N.W.2d 552, 554 (Iowa 1982); *accord Dunlap Care Ctr. v. Iowa Dep't of Soc. Servs.*, 353 N.W.2d 389, 397 (Iowa 1984); *Iowa–Ill. Gas & Elec. Co.*, 334 N.W.2d at 751–52. Additionally, the rule must not exceed or limit the scope of the authority granted by the enabling legislation. *Smith–Porter v. Iowa Dep't of Human Servs.*, 590 N.W.2d 541, 545 (Iowa 1999); *Lenning v. Iowa Dep't of Transp.*, 368 N.W.2d 98, 103 (Iowa 1985); *Dunlap Care Ctr.*, 353 N.W.2d at 397; *Iowa–Ill. Gas & Elec. Co.*, 334 N.W.2d at 752; *Haesemeyer*, 308 N.W.2d at 37. Although the ultimate decision concerning the validity of a rule rests with the reviewing court, *Iowa–Ill. Gas & Elec. Co.*, 334 N.W.2d at 752, we must accord some respect to the agency's decision, *Dunlap Care Ctr.*, 353 N.W.2d at 393.

■ We conclude a rational agency could conclude it was empowered to enact a rule governing the reconstruction or modification of nonconforming signs. In fact, this rule is compatible with federal regulations. Under the federal regulations, nonconforming signs may remain in existence if the signs remain in substantially the same condition as they were in at the time they were initially grandfathered in. *See Indep. Stave Co. v. Mo. Hwy. & Transp. Comm'n*, 748 S.W.2d 870, 875 (Mo.Ct.App.1988) (citing 23 C.F.R. § 750.707(d)(5) (1987)); *State v. World Diversified, Inc.*, 254 Neb. 307, 576 N.W.2d 198, 202 (1998) (same). The states were explicitly directed to establish their own standards to differentiate a substantial change from customary maintenance. *Id.* Thus, it is well recognized that a nonconforming sign will lose its protected status if it fails to comply with certain limitations. *See Iowa Dep't of Transp.*, 272 N.W.2d at 11 (recognizing a nonconforming sign could be removed for subsequent nonconformance); 40 C.J.S. *Highways* § 239, at 90.

Furthermore, section 306C.12 clearly subjects all nonconforming signs to the applicable permit provisions of section 306C.18 and subsequent removal procedures of section 306C.19, in addition to the corresponding regulations administering those. sections. *See Iowa Dep't of Transp.*, 272 N.W.2d at 10. Moreover, it would be absurd to conclude the legislature intended to permit nonconforming signs to continue in perpetuity. By permitting only customary maintenance, the obvious purpose of the beautification act was to eventually weed out nonconforming signs. *See Nat'l Adver. Co. v. Bradshaw*, 48 N.C.App. 10, 268 S.E.2d 816, 821 (1980) ("obvious purpose of the statute and regulation is to gradually phase out signs ... which existed at the time of enactment but which tended to harm the public interest and welfare by causing ugliness, distraction, and safety hazards"); *see also* 1972 Iowa Acts ch. 1068, preamble (B) (codified at Iowa Code §§ 306C.1–306C.21 (1973)) (act's purpose is to preserve scenic beauty of public highways by controlling outdoor advertising signs).

▆▆▆ Applying rule 761—117.6(5) to the facts of this case, we conclude the two signs in this case were in fact illegally modified. The dimensions, size, and number of posts of both signs had increased. Clearly, this is a modification. *See* Iowa Admin. Code r. 761—117.1. The alterations and additions in this case were too extensive to constitute de minimis changes or a mere continuation of the existing sign. *See State*, 576 N.W.2d at 203 (changes not constituting customary maintenance). Our conclusion is aligned with the other states that have adopted similar criteria in regulating nonconforming signs. *See, e.g., U.S. Outdoor Adver. Co. v. Ind. Dep't of Transp.*, 714 N.E.2d 1244, 1265 (Ind.Ct. App.1999) (finding reconstruction resulted in a substantial change to nonconforming sign, where owner added new sign face, and changed dimensions and support posts); *Royal Food Sys., Inc. v. Mo. Hwy. & Transp. Comm'n*, 876 S.W.2d 38, 41 (Mo.Ct.App.1994) (change in advertising message was not a substantial change where structure and support posts remained unchanged); *Indep. Stave Co.*, 748 S.W.2d at 875 (thirty-five percent increase in size constituted a substantial change warranting revocation of nonconforming sign's legal status); *State*, 576 N.W.2d at 203 (may remove nonconforming sign if support poles replaced or dimensions and size altered); *Nat'l Adver. Co.*, 268 S.E.2d at 821 (permit revoked when owner replaced poles and face panels after sign incurred more than fifty percent damage from windstorm); *Keystone Outdoor Adver. v. Commonwealth*, 687 A.2d 47, 49–50 (Pa.Commw.Ct.1996) (revoked nonconforming sign's permit after owner changed dimensions, added posts, and used more durable materials after sign suffered more than fifty percent damage following a windstorm). *But see Dep't of Transp. v. Keller Dev. Corp.*, 122 Ill.App.3d 1038, 78 Ill.Dec. 413, 462 N.E.2d 532, 534–35 (1984) (finding replacement of nonconforming sign constituted legal repair, not erection, where sign was completely destroyed by windstorm).

## VI. Conclusion.

We conclude the Department did not exceed its rulemaking authority in promulgating rule 761—117.6(5) to regulate the reconstruction and modification of nonconforming signs under Iowa Code chapter 306C. The two signs in this case were modified without seeking prior approval from the Department. The district court correctly denied the petition for judicial review.

**AFFIRMED.**