(No. 39166.—

BOARD OF EDUCATION OF THE CITY OF ROCKFORD, Appellee, *vs.* RAY PAGE, Superintendent of Public Instruction, *et al.*, Appellants.

*Opinion filed September 29, 1965.—Modified on denial of rehearing November 18, 1965.*

WILLIAM G. CLARK, Attorney General, of Springfield, (RICHARD A. MICHAEL, A. ZOLA GROVES, JOHN J. O'-TOOLE, and RICHARD A. BERMAN, Assistant Attorneys General, of counsel,) for appellants.

PEDDERSON, MENZIMER, CONDE & STONER, of Rockford, (DALE F. CONDE, of counsel,) for appellee.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

This case involves the validity of specifications for public school buildings promulgated in 1964 by the defendant, Superintendent of Public Instruction, purportedly pursuant

to section 2—3.12 of the School Code. (Ill. Rev. Stat. 1963, chap. 122, par. 2—3.12.) The plaintiff, Board of Education for School District 205 in the city of Rockford, brought this action for declaratory judgment seeking a declaration that both the statute and the specifications were unconstitutional and void, and for injunctive relief against their enforcement. After hearing evidence the circuit court for the Seventeenth Judicial Circuit granted the relief requested. Defendant appeals to this court, a constitutional question being directly involved.

The School Code, enacted in 1961, gives to the Superintendent of Public Instruction the power, *inter alia,* to make rules necessary to carry into effect school laws, (Ill. Rev. Stat., 1961, chap. 122, par. 2—3.6,) and further:

"To prepare for school boards with the advice of the Department of Public Health, the Supervising Architect and the State Fire Marshal specifications for the minimum requirements for the heating, ventilating, lighting, seating, water supply, toilet and safety against fire which will conserve the health and safety of the pupils of the public schools." Ill. Rev. Stat., 1961, chap. 122, par. 2—3.12.

Pursuant to this statutory authority the defendant, in 1964, promulgated a 151-page circular entitled "Building Specifications for Health and Safety in Public Schools, Circular Series A, No. 157."

At the hearing on the merits the only evidence offered was on behalf of the plaintiff. It appears from the testimony that in 1956, prior to the promulgation of defendant's specifications, the Director of the Fire Prevention Bureau of Rockford made a detailed inspection of the public schools and made 207 recommendations based on the National Fire Prevention Code and the National Building Code. The plaintiff then issued $500,000 in bonds, pursuant to referendum, to comply with these recommendations. In two years the recommendations were complied with at a cost of approximately $550,000.

The plaintiff further adduced uncontradicted expert testimony that the Rockford public schools are now substantially safe and comply with the National Fire Prevention Code, the National Fire Protection Association Building Exits Code 101, the Rockford Building Code, the Rockford Plumbing Code, the standards established by the Division of Sanitary Engineering, State Department of Public Health, and the National Electric Code, and the recommendations of the National Board of Fire Underwriters. There was further expert testimony that it would cost $60,000 to make the survey required by the Superintendent's specifications, and $1,000,000 to comply with these specifications.

The defendant argues that the statutory authority for his specifications sets a sufficient standard to control administrative discretion and is, therefore, valid. He further contends that the specifications promulgated thereunder were proper, but if any specification is invalid, that provision is separable from the whole.

Plaintiff, however, insists that the statute unconstitutionally delegates law-making power to the Superintendent and that both the statute and the specifications are invalid.

It is clear that the General Assembly cannot delegate its general legislative power to determine what the law shall be. (*People ex rel. Daesch* v. *Mayor of Belleville,* 22 Ill.2d 226; *City of Evanston* v. *Wazau,* 364 Ill. 198.) However it may authorize others to do those things which it might properly do, but cannot do as understandingly or advantageously itself. *Memorial Gardens Ass'n* v. *Smith,* 16 Ill.2d 116; *People ex rel. Coutrakon* v. *Lohr,* 9 Ill.2d 539; *People ex rel. Gutknecht* v. *Chicago Port District,* 4 Ill.2d 363.

The precision of the permissible standard required to be set by the legislature must necessarily vary according to the nature of the ultimate objective and the peculiar problems involved. (*People ex rel. Daesch* v. *Mayor of Belleville,* 22 Ill.2d 226; *Department of Public Works and Buildings* v. *Lanter,* 413 Ill. 581; *Kough* v. *Hoehler,* 413 Ill.

409.) Plaintiff does not question that the legislature could properly set minimum standards for public school buildings to protect the health and safety of pupils. But the technical complexity and the diversity of problems and the degree of detail involved in setting specifications for such minimum standards obviously can be better resolved by an administrative body than by the legislature itself. We also feel that the very nature of the objective to be achieved and the problems to be solved negate the usefulness of setting more particular standards by the legislature. *People ex rel. Daesch* v. *Mayor of Belleville,* 22 Ill.2d 226.

The legislature has commanded the Superintendent to prepare "specifications for the minimum requirements * * * which will conserve the health and safety of the pupils." We conclude that this is a proper delegation of administrative authority to the Superintendent.

The next question is whether or not in promulgating the specifications under attack, the Superintendent acted within the ambit of his delegated authority. In so determining, we have examined the entire circular promulgated by the Superintendent. The circular is denominated "Building Specifications," and is referred to by the parties as a "code." It is in fact a comprehensive building code, consisting of detailed specifications and extensive provisions and rules for administration and enforcement.

This code repeatedly states that the standards set are "minimum," but in the foreword, the Superintendent expresses a desire that the specifications "will furnish * * * an adequate guide toward the establishment of greater building safety * * *."

The code provides for an advisory board which, according to Rule 108.07 shall assist in keeping the specifications up-to-date "by evaluating new techniques, methods and procedures * * * and by recommending the incorporation of those *determined to be worthwhile and justifiable.*"

(Emphasis ours.) In Rule 102.04 it is provided: "These specifications shall supersede all provisions of municipal, county and other local codes and ordinances pertaining directly or indirectly to the protection and conservation of the safety and/or health of pupils while in attendance at schools falling within the jurisdiction of these Specifications."

The General Assembly did not purport to delegate to the Superintendent an unfettered power to prescribe his own standard of excellence for public school construction. His mandate was merely to prepare specifications for *"minimum requirements * * * which will conserve the health and safety of the pupils."* Our conclusion that this constitutes a valid delegation of power is premised on our belief that these words establish a sufficient standard, even though an admittedly flexible one. It is, therefore, necessary to attribute a meaning to the word "minimum".

The word "minimum" is commonly defined as "the least quantity assignable, admissible, or possible in a given case —opposed to *maximum."* Webster's Third New International Dictionary; *Ruda v. Industrial Board,* 283 Ill. 550, 554.

We think it apparent that the legislature intended that the Superintendent should establish a standard below which school buildings would be dangerous to the health and safety of pupils. We find nothing in the act to justify a code embracing the highest standards of construction no matter how worthwhile.

From a careful reading of the specifications and consideration of the uncontradicted expert testimony in the trial court, we feel that the Superintendent has misconceived the extent of the power delegated to him. He has established a voluminous and complete set of standards considerably more stringent than other well recognized norms for school construction. It is undisputed that the Rockford public schools are now reasonably and substantially safe from a

health and fire standpoint, but compliance with the Superintendent's specifications would require an expenditure of approximately $1,000,000.

The fact that these specifications are maximum rather than minimum standards is made clear by Rule 102.04 which preempts the entire field of school safety and purports to strike down all local codes and ordinances pertaining to school safety. No minimum code could reasonably strike down more stringent regulations in such vital areas of local concern.

School safety is a relative thing and we would not quarrel with a legislative determination that the ultimate should be attained in this area, regardless of cost. However, the legislature did not so determine, and therefore the Superintendent is powerless to do so.

We must also reject the Superintendent's argument that the provisions of the specifications are separable and only those which are clearly invalid should be stricken. It is our conclusion that the specifications and rules promulgated by the Superintendent comprise a single code intended to supersede all existing codes and establish a higher standard for school construction than was heretofore considered reasonable.

Because the Superintendent was not given authority to promulgate such a code, the trial court properly declared it invalid.

Insofar as the judgment of the trial court declared section 2—3.12 of the School Code invalid, it is reversed. Insofar as the judgment declared the Superintendent's specifications invalid and enjoined their enforcement, it is affirmed. affirmed.

*Reversed in part and affirmed in part.*

*On Rehearing:*

Since this case was submitted and the opinion adopted, the appellants have directed our attention to the provisions of Senate Bill 701 enacted by the 74th General Assembly,

which became law on the 1st day of July, 1965. This Bill provides in substance that schools constructed prior to 1955 shall be inspected on or before July 1, 1967; that in making the inspection, the Code referred to in this opinion shall be used as a guide; and that defects, if any, shall be corrected prior to July 1, 1970. We find it inapplicable to the present case. Our ruling here is based upon the law in effect at the time the case was decided in the trial court. We therefore adhere to our original opinion.