THE DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellant, *v.* KELLER DEVELOPMENT CORPORATION, Defendant-Appellee.

Fifth District No. 5—83—0417

Opinion filed February 24, 1984.

Paul D. Giamanco, Special Assistant Attorney General, of Giamanco and Wexstten, of Mt. Vernon, for appellant.

Frank H. Schniederjon, of Schniederjon, Weber, Harvey & Stephens, of Effingham, for appellee.

JUSTICE KARNS delivered the opinion of the court:

The Illinois Department of Transportation brought a petition to abate nuisance and to enjoin the use of a billboard against Keller Development Corporation pursuant to the Highway Advertising Control Act of 1971 (Ill. Rev. Stat. 1981, ch. 121, par. 501 *et seq.*). The circuit court of Effingham County denied the Department's prayer. We must determine whether Keller's billboard is unlawful and a public nuisance. Ill. Rev. Stat. 1981, ch. 121, par. 510.

The billboard was erected in 1972 on real estate leased by Keller Development and was in place on the effective date of the Act. It was registered with the Department as a nonconforming sign in 1975 (Ill. Rev. Stat. 1975, ch. 121, par. 508). In September 1981, the billboard

was extensively damaged by a windstorm. Charles Keller, president of Keller Development, assessed the damage and authorized a contractor to repair the sign.

The chronology unfolds in three letters from John Sills, district engineer of land acquisition for the Department, to Keller Development Corporation. On September 24, Sills notified Keller Development that its nonconforming sign permit had been voided because the sign had been removed from the site. Two weeks later, a second letter was prompted by the Department's field observation of a new sign being erected at the same site. Thirty days' notice was given to remove what the Department concluded was an illegal sign. The letter explained:

> "Based on the Highway Advertising Control Act of 1971 you are now erecting an outdoor advertising sign without a valid permit, or an illegal sign. A permit for outdoor advertising cannot be issued for this new sign as it is located in an area that does not conform to outdoor advertising. Since it is located beyond the Urban Limits of Effingham and does not conform to the Act it is an illegal sign. Based on the Act this newly erected sign will be required to be removed."

A third letter again cautioned Keller Development not to continue work on the project. Charles Keller, president of Keller Development Corporation, denied knowledge and receipt of these letters. Whether they were received or not is unimportant under the view we take of the proper interpretation of the Act.

The Department argues that the new sign which replaced the nonconforming sign, should not have been built and, as built, does not conform to the requirements of the Act and should therefore be declared a public nuisance. (Ill. Rev. Stat. 1981, ch. 121, par. 510.) Keller Development maintains that the repaired sign should be permitted to continue as a nonconforming use under its 1975 registration.

The regulation of billboards and their restriction on public highways is intended for the protection of the public traveling upon highways and to promote safe driving and eliminate traffic hazards. (*Paulus v. Smith* (1966), 70 Ill. App. 2d 97, 217 N.E.2d 527.) Although the legislative finding and declaration contained in section 1 of the Act (Ill. Rev. Stat. 1981, ch. 121, par. 501) states that the purpose of the Act is to protect the public investment in interstate and primary highways and "to promote the recreational value of public travel [and] to preserve natural beauty," one may find it difficult to perceive in what fashion the Act accomplishes this purpose. A hodgepodge of various signs at various locations, depending on the

product or activity advertised, are permitted, this in turn depending on whether the sign is in a commercial or industrial area, a business area or an urban area.

The parties are in agreement that the State has the power to regulate and prohibit signs such as these and to "take" such signs upon payment of just compensation. Ill. Rev. Stat. 1981, ch. 121, par. 509.[1]

Section 3.08 of the Act (Ill. Rev. Stat. 1981, ch. 121, par. 503.08) states that " '[e]rect' means to construct, build, raise, assemble, place, affix, attach, create, paint, draw or in any other way bring into being or establish; \*\*\*." It does not include any of these activities, however, when performed incidental to "normal maintenance or repair of a sign or sign structure."

The evidence establishes that the sign was re-erected or replaced at the location where it had previously existed. The support beams were placed in holes adjacent to the holes where the old support beams had been located. While in the opinion of Keller the sign suffered less than 50% damage in the windstorm, the company hired to repair the sign found that it was not economically feasible to repair the twisted steel supports that had been damaged and opted to replace them with wooden supports. The existing sign was completely removed, and no materials from the old sign were used in the construction of the replacement sign.

██ The trial court concluded that the statutory definition of "erect" did not preclude the replacement of an existing sign as part of the "normal maintenance or repair" of an existing nonconforming sign. In short, replacement of an existing, nonconforming sign is "repair" and not "erection." We agree.

While the Department of Transportation is authorized to make rules and regulations "regarding implementation and enforcement" of the Act, such rules and regulations may not be inconsistent with the provisions of the Act. (Ill. Rev. Stat. 1981, ch. 121, par. 514.01.) Here

---

[1]The statute is not a model of legislative clarity. When and to what extent compensation is payable for the "taking" of a sign is not clear. Section 10 (Ill. Rev. Stat. 1981, ch. 121, par. 510) would seem to make signs erected in violation of the Act a public nuisance subject to removal by the owner without compensation or by the State, at its expense, in which event they become the property of the State. Section 9 (Ill. Rev. Stat. 1981, ch. 121, par. 509), however, provides that "[j]ust compensation shall be paid for the removal of signs lawfully erected or lawfully in existence but not permitted to be maintained under this Act." Section 3.06 (Ill. Rev. Stat. 1981, ch. 121, par. 503.06) defines "maintain" as allowed to exist. The Department argues that this sign is not allowed to exist and therefore not permitted to be "maintained." *Quaere*: would just compensation be payable even though the sign were erected in violation of the Act?

the Department's position is premised in the main on one of its regulations, not the provisions of the Act. In "implementation" of the Act the Department has promulgated a regulation, section 3.08, Rules and Regulations for the Control of Outdoor Advertising Signs, which provides "when more than 50 percent of the uprights require replacement in whole or in part the sign may not be re-erected without a valid permit. If a permit cannot be obtained, the sign will be acquired in its damaged condition." This rule appears to us to be inconsistent with the Act and to change entirely the definition of "erect" contained in section 3.08 of the Act.

■ It is a well-established rule that the legislature, having declared its policy and purpose and provided standards for the exercise of the power, may confer upon administrative authorities the power to enact rules and regulations to promote the purpose and spirit of the legislation and carry it into effect. (*People ex rel. Mosco v. Service Recognition Board* (1949), 403 Ill. 442, 86 N.E.2d 357.) However, a statute which is being administered may not be altered or added to by the exercise of a power to make regulations thereunder. *Du-Mont Ventilating Co. v. Department of Revenue* (1978), 73 Ill. 2d 243, 383 N.E.2d 197; *P. H. Mallen Co. v. Department of Finance* (1939), 372 Ill. 598, 25 N.E.2d 43.

The Department has in effect usurped the power of the General Assembly by adding a substantive provision to the Act which greatly increases the severity of the Act. (See *Board of Education v. Page* (1965), 33 Ill. 2d 372, 211 N.E.2d 361.) This is much more than merely administering or enforcing the Act; the Department has decided what the law ought to be, a legislative function. The State has called to our attention the case of *National Advertising Co. v. Bradshaw* (1980), .48 N.C. App. 10, 268 S.E.2d 816, involving the application of the North Carolina Outdoor Advertising Control Act to similar facts. There, the North Carolina Administrative Code, which apparently is given the force of statutory enactments, a matter not made an issue in or discussed in the opinion, expressly provided that nonconforming signs damaged in excess of 50% of the initial value and signs "destroyed" could not be repaired or re-erected. We perceive the statutory scheme to be substantially different from the Illinois act. It seems highly unlikely that the General Assembly intended to allow the repair of a sign that suffered less than 50% damage through the neglect of the owner while prohibiting the replacement of a sign that was completely destroyed by an act of God through no fault of the owner. We shall not so construe the Act without a clear expression of legislative intent.

The judgment of the circuit court of Effingham County is affirmed.

Affirmed.

WELCH, P.J., and KASSERMAN, J., concur.