NOTICE
Decision filed 09/16/19. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2019 IL App (5th) 180269

NO. 5-18-0269

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| DUSTY'S OUTDOOR MEDIA, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Fayette County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE DEPARTMENT OF TRANSPORTATION; | ) | No. 13-CH-22 |
| RANDALL BLANKENHORN, Secretary of | ) | |
| Transportation; and LAURA MLACNIK, Department | ) | |
| of Transportation Bureau Chief of Land Acquisition, | ) | Honorable |
| | ) | Daniel E. Hartigan, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Welch and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1 This appeal involves a highway billboard that was erected prior to the effective date of the Highway Advertising Control Act of 1971 (Act) (225 ILCS 440/1 *et seq.* (West 2010)). New signs may not be erected without complying with the requirements of the Act. However, preexisting signs that do not conform with the Act's requirements may remain in place, and sign owners are allowed to perform "the normal maintenance or repair of signs and sign structures." *Id.* § 3.06. However, if more than 60% of the upright posts supporting a wooden sign are replaced, this is not deemed to be part of the "normal maintenance or repair" of the sign. *Id.* § 3.08. At issue in this appeal is the definition of the word "replace."

1

¶ 2      A sign owned by the plaintiff, Dusty's Outdoor Media, LLC, was blown over in a windstorm. The plaintiff had its sign repaired by returning it to an upright position in its original location. The defendant, the Department of Transportation (IDOT), determined that, in doing so, the plaintiff "replaced" 100% of the upright posts supporting the sign. IDOT therefore determined that the sign was no longer permitted to remain in place under the Act and demanded that the plaintiff remove the sign within 30 days. The plaintiff filed a petition seeking a writ of *mandamus* and relief related to eminent domain. It argued that because it used the original uprights, it did not "replace" more than 60% of the uprights. The trial court agreed with the plaintiff and granted summary judgment in its favor. IDOT appeals, arguing that (1) the court erred in interpreting the word "replace" to require the use of new materials, (2) as such, the court erred in finding that the plaintiff did no more than perform "normal maintenance or repair" of the sign, and (3) the court erred in granting summary judgment to the plaintiff on its request for relief related to eminent domain because no taking occurred. We affirm in part and reverse in part.

¶ 3      The plaintiff owns and leases outdoor signs for advertising. Placement of such signs along highways is regulated by the Act. The Act provides that new signs may not be erected without first obtaining a permit. *Id.* § 8. However, signs that were in existence before the effective date of the Act may remain in place. Such signs must be registered with IDOT. Owners of signs registered under this provision are issued registration tags for their signs, which must be displayed on the structure of the sign. *Id.* These registration tags are known as "red tags." The sign at issue in this appeal was in place prior to the effective date of the Act. IDOT issued a "red tag" to the plaintiff for the sign. The sign is located east of Vandalia, Illinois, along Interstate 70. IDOT has determined that no new signs are permissible in that vicinity.

¶ 4     On February 28, 2011, the sign blew down in a windstorm. Late in March, the plaintiff repaired the billboard by placing it upright in its original location. The original upright posts were used. Although the plaintiff added bracing to the uprights for safety reasons, the sign was not otherwise enhanced or altered from its condition prior to the storm.

¶ 5     On March 29, 2011, IDOT issued a notice informing the plaintiff that its billboard was "irreparable" without the replacement of more than 60% of the original uprights. The notice informed the plaintiff that its red tag permit was therefore no longer valid. We note that it is not clear from the record precisely when the sign was placed upright; however, IDOT's initial notice appears to have been based on an observation of the sign before this occurred. On April 1, the plaintiff's attorney responded to IDOT's notice in a letter, explaining that the sign was repaired without replacing any of the original uprights. On April 8, IDOT sent a letter to the plaintiff explaining that it did not differentiate between new and original uprights in determining whether the uprights have been "replaced." It is not clear whether any additional correspondence transpired between the parties over the next two years. On April 23, 2013, IDOT issued a notice of unlawful sign to the plaintiff. The notice stated that the billboard was illegal and gave the plaintiff 30 days to remove it.

¶ 6     On May 13, 2013, the plaintiff filed the three-count complaint at issue in this appeal. Count I requested a declaration that IDOT's actions constituted a "taking" for which just compensation was required. Count II requested a writ of *mandamus* directing IDOT to reinstate the plaintiff's rights under its red tag permit and to refrain from engaging in an unconstitutional taking. Count III requested a preliminary injunction. On the same day, the plaintiff filed a petition for an emergency injunction, which the court granted. IDOT filed a motion to dismiss the plaintiff's

3

complaint, which the court denied. In October 2013, the court entered a preliminary injunction with the agreement of both parties.

¶ 7    In October 2017, both parties filed motions for summary judgment. IDOT argued in its motion that the plaintiff was not entitled to the relief it requested because the sign was not legal under the Act. The plaintiff argued in its motion that it did not replace 60% or more of the uprights and that, as such, it had merely maintained its sign within the meaning of the applicable statutes. Attached to the plaintiff's motion was the affidavit of Dick Rhodes, the plaintiff's owner and manager. Rhodes attested that the repairs performed on the sign in March 2011 involved placing the original sign upright in its original location and bracing the support posts. He further attested that nothing was done to change the nature of the sign.

¶ 8    On April 4, 2018, the court entered a written order. It framed the issues before it as (1) "what is the exact meaning of 'replacing' under the Highway Advertising Act of 1971" and (2) what constitutes "normal maintenance and repairs of a wooden billboard." In addressing the first of these questions, the court found that the "plain and ordinary" meaning of the word "replace," as used in the applicable statute, means replacing 60% or more of the original posts with new material. Applying this definition, the court found that the plaintiff did not replace 60% or more of the original uprights. Addressing the second question, the court found that placing the original sign in its original location after it was knocked down by wind constitutes normal maintenance or repair pursuant to this court's holding in *Department of Transportation v. Keller Development Corp.*, 122 Ill. App. 3d 1038 (1984). The court therefore granted the plaintiff's motion for summary judgment and denied IDOT's motion. This appeal followed.

¶ 9    The issue before us in this case is a question of statutory construction. Our primary objective is to ascertain and effectuate the intent of the legislature. The best indicator of legislative

4

intent is the express statutory language. *Nowak v. City of Country Club Hills*, 2011 IL 111838, ¶ 11. Words used in a statute should be given their plain and ordinary meaning, unless the legislature has provided a statutory definition. *Alvarez v. Pappas*, 229 Ill. 2d 217, 228 (2008). If a statute is clear and unambiguous, it should be enforced as written without resort to extrinsic aids of statutory construction. *Nowak*, 2011 IL 111838, ¶ 11.

¶ 10     If a statute is subject to more than one reasonable interpretation, however, it is ambiguous, and we must therefore look beyond the express language of the statute and consider principles of statutory construction. *Id.* ¶ 13. One important rule of statutory construction provides that we must read a statute in its entirety rather than reading words or phrases in isolation. *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 14. We must also consider the purposes and policy goals behind the statute. *People v. Davis*, 296 Ill. App. 3d 923, 926 (1998). We must presume that the legislature did not intend an unjust or absurd result. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 441 (2010).

¶ 11     If a statute is ambiguous, courts generally give deference to the interpretation given to the statute by the administrative agency charged with enforcing it. *Advanced Ambulatory Surgical Center, Inc. v. Health Facilities & Services Review Board*, 2014 IL App (4th) 130468, ¶ 34. This is because we presume that the agency's interpretation is informed by "its experience and expertise." *State of Illinois Department of Central Management Services v. State of Illinois Labor Relations Board, State Panel*, 373 Ill. App. 3d 242, 249 (2007). However, while the interpretation advanced by the agency is relevant, it is not binding on this court. *Id.* (citing *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254 (1995)). If the agency's interpretation is not reasonable or is at odds with the clearly expressed legislative intent, we need not accept it unconditionally. See *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 362 Ill. App. 3d

5

652, 657 (2005). Statutory construction is a question of law. Our review is therefore *de novo*. *Solon*, 236 Ill. 2d at 439.

¶ 12    Two provisions of the Act are at issue. Section 3.06 defines the term "maintain" as meaning "to allow to exist." 225 ILCS 440/3.06 (West 2010). The statute further provides that maintaining a sign "includes the periodic changing of advertising messages as well as the normal maintenance or repair of signs and sign structures." *Id.* Section 3.08 defines the term "erect." It provides as follows:

> " 'Erect' means to construct, build, raise, assemble, place, affix, attach, create, paint, draw or in any other way bring into being or establish; but does not include any of the foregoing activities when performed as incident to the change of advertising message or normal maintenance or repair of a sign or sign structure. For the purposes of this definition, the following shall not constitute normal maintenance or repair of a sign or sign structure: replacing more than 60% of the uprights, in whole or in part, of a wooden sign structure; replacing more than 30% of the length above ground of each broken, bent, or twisted support of a metal sign structure; raising the height above ground of a sign or sign structure; making a sign bigger; adding lighting; or similar activities that substantially change a sign or make a sign more valuable." *Id.* § 3.08.

As stated earlier, new signs may not be "erected" without obtaining a permit and complying with other provisions of the Act. *Id.* § 8. However, existing signs may be "maintained" because "normal maintenance or repair" is excluded from the definition of "erect." *Id.* § 3.08. The question, then, is whether the plaintiff performed ordinary maintenance or repair of its sign by returning it to an upright position in its original location. That question turns on whether putting the uprights back

6

in their original location constituted "replacement" of the uprights within the meaning of section 3.08.

¶ 13　We begin our analysis with the express language of the statutes. The Act does not define the term "replace." As we noted earlier, terms that are not defined by statute must be given their plain and ordinary meanings. *Alvarez*, 229 Ill. 2d at 228. There are multiple possible definitions for the word "replace." It can mean "to restore to a former place or position." Merriam-Webster's New Collegiate Dictionary 999 (9th ed. 1988). It can also mean "to take the place of esp[ecially] as a substitute or successor." *Id.* Finally, the word "replace" can mean "to put something new in the place of." *Id.* IDOT argues that within the context of the statute, the word "replace" includes restoring a sign to its former place or position, while the plaintiff argues that in the context of the statute as a whole, it can only mean "to put something new in the place of" the original sign or sign structure.

¶ 14　Before addressing these arguments, we note that the fact that there are multiple dictionary definitions for the word "replace" does not necessarily render the statute ambiguous. See *Slepicka*, 2014 IL 116927, ¶ 14. This is because statutory ambiguity is not merely a matter of "definitional possibilities"; rather, it is a question of "statutory context." (Internal quotation marks omitted.) *Italia Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350, ¶ 17 (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994)). A statute is ambiguous if any of its terms are subject to multiple definitions that make sense within the context of the statute. *Slepicka*, 2014 IL 116927, ¶ 14. For the reasons that follow, we find that only the definition proposed by the plaintiff makes sense within the context of the statute.

¶ 15　The definition proposed by IDOT would render other phrases in section 3.08 meaningless. For example, the statute provides that "replacing more than 30% of the length above ground of

7

each broken, bent, or twisted support of a metal sign structure" does not constitute "normal maintenance or repair." 225 ILCS 440/3.08 (West 2010). As the plaintiff points out, a sign owner would never "replace" damaged metal supports by placing them back in the ground. Thus, the word "replace" in this phrase only makes sense if it is read to mean "to put something new in place of" the damaged supports.

¶ 16 As the plaintiff also notes, the statutory definition of "erect" includes activities such as constructing, building, raising, assembling, or placing signs, but the definition does not include "*any* of the foregoing activities" if they are performed as part of the normal maintenance or repair of the sign or incident to changing the advertising message. (Emphasis added.) *Id.* It would be virtually impossible to construct, build, raise, assemble, or place a wooden sign without "replacing" its upright support posts if that term is given the meaning urged by IDOT. Thus, this interpretation would render the exception essentially meaningless. See *E&E Hauling, Inc. v. Ryan*, 306 Ill. App. 3d 131, 138 (1999) (stating that we must not interpret a statute in a manner that renders any word or phrase meaningless).

¶ 17 Perhaps the strongest indication that the legislature did not intend the word "replace" to have the meaning ascribed to it by IDOT is its choice to end the list of activities that do not constitute "normal maintenance or repair" with the catchall phrase "or similar activities that substantially change a sign or make a sign more valuable." 225 ILCS 440/3.08 (West 2010). This indicates that the legislature intended to preclude sign owners from enhancing the value of nonconforming signs or significantly changing the nature of those signs by performing any of the specified activities or any other "similar activities." The definition of "replace" proposed by the plaintiff is consistent with this legislative goal; the definition proposed by IDOT is not. We therefore conclude that the only reasonable definition of the word "replace" within the context of

the statute is "to put something new in place of." Because the plaintiff used the original uprights when it returned the sign to its original location, it did not "replace" them within the meaning of the statute.

¶ 18    In support of its argument to the contrary, IDOT argues that we must "afford the statutory language the fullest, rather than narrowest, possible meaning to which it is susceptible." See *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002). However, IDOT does not provide us with any basis to find that its interpretation of the term "replace" makes sense within the context of the statute as a whole. Thus, we do not find the term to be susceptible to its proposed interpretation.

¶ 19    IDOT also urges us to accord deference to its proposed interpretation because it is the administrative agency charged with enforcing the Act. We are not persuaded. As noted earlier, the agency's interpretation is not binding on this court. See *Branson*, 168 Ill. 2d at 254; *Illinois Bell Telephone Co.*, 362 Ill. App. 3d at 657. Moreover, deference to the agency's interpretation only comes into play if we find a statutory term to be ambiguous. See *Branson*, 168 Ill. 2d at 254; *Illinois Bell Telephone Co.*, 362 Ill. App. 3d at 657. For the reasons we have already discussed, we find that only one definition of the term "replace" makes sense within the context of the statute. As such, we find no ambiguity. See *Slepicka*, 2014 IL 116927, ¶ 14. We therefore reject IDOT's claim that putting the original uprights in their original location constituted "replacement" of the uprights within the meaning of the Act.

¶ 20    We find additional support for our conclusion from this court's decision in *Keller*. We note that *Keller* is not controlling for two reasons. First, both sections 3.06 and 3.08 were amended in relevant respects long after *Keller* was decided. In 2010, the legislature added language to section 3.06 providing that maintaining a sign "includes the periodic changing of advertising messages" and "the normal maintenance or repair of signs and sign structures." Pub. Act 96-919, § 5 (eff.

9

June 9, 2010) (amending 225 ILCS 440/3.06). In the same bill, the legislature added language to section 3.08 providing that "normal maintenance or repair" does not include "replacing more than 60% of the uprights \*\*\* of a wooden sign structure" and various other "activities that substantially change a sign or make a sign more valuable." *Id.* (amending 225 ILCS 440/3.08). Second, although the facts and circumstances of the two cases are similar, there is one key factual distinction. In *Keller*, a damaged sign was replaced with a sign that used all new materials. See *Keller*, 122 Ill. App. 3d at 1040. However, part of the rationale that underpinned our holding in *Keller* is relevant to our interpretation of the current versions of the statutes.

¶ 21    There, the Keller Development Corporation (Keller), like the plaintiff in this case, owned a sign that was in place before the effective date of the Act. *Id.* at 1038. Like the plaintiff's sign, Keller's sign was registered with IDOT as a nonconforming sign. *Id.* Keller's president authorized a contractor to repair the sign after it sustained extensive damage in a windstorm. *Id.* at 1038-39. Unlike what occurred in this case, the company hired to repair the sign constructed a replacement sign using none of the materials from the original sign. *Id.* at 1040. In particular, the repair company replaced the damaged metal uprights with new wooden uprights because it found this to be more economically feasible than repairing the damage to the original metal uprights. *Id.* As in this case, IDOT revoked Keller's nonconforming sign registration and demanded that Keller remove its reconstructed billboard. *Id.* at 1039. When Keller did not comply, IDOT filed a petition alleging that the sign constituted a public nuisance. *Id.* at 1038.

¶ 22    The question before both the trial court and this court was whether the billboard was unlawful under the Act, thereby constituting a public nuisance. *Id.* The trial court found that the replacement of an existing sign constituted "normal maintenance or repair" of the sign. It therefore

found that Keller did not "erect" a new sign within the meaning of section 3.06 and concluded that the sign did not violate the Act. *Id.* at 1040. On appeal from that ruling, this court agreed. *Id.*

¶ 23     In reaching this conclusion, we first looked at a regulation promulgated by IDOT, which apparently was the basis for IDOT's determination that Keller could not lawfully re-erect its sign. That regulation provided that " 'when more than 50 percent of the uprights require replacement in whole or in part the sign may not be re-erected without a valid permit.' " *Id.* at 1041 (quoting what was later codified at 92 Ill. Adm. Code 522.308 (1985)). We found this regulation to be inconsistent with section 3.08 of the Act and the Act as a whole because it "greatly increase[d] the severity of the Act." *Id.* We explained that although the legislature can confer authority on administrative agencies to promulgate regulations, agencies do not have the authority to alter or add to a statute. *Id.* We concluded that IDOT exceeded its authority and "in effect usurped the power" of the legislature by creating a rule that significantly increased the severity of the act. *Id.*

¶ 24     We also noted that the pertinent statute, section 3.08, excluded from the definition of the term "erect" any activities that were "performed incidental to 'normal maintenance or repair of a sign or sign structure.' " *Id.* at 1040 (quoting Ill. Rev. Stat. 1981, ch. 121, ¶ 503.08). In concluding that Keller's actions constituted "normal maintenance or repair," we stated:

> "It seems highly unlikely that the General Assembly intended to allow the repair of a sign that suffered less than 50 percent damage through the neglect of the owner while prohibiting the replacement of a sign that was completely destroyed by an Act of God through no fault of the owner. We shall not so construe the Act without a clear expression of legislative intent." *Id.* at 1041.

We therefore upheld the ruling of the trial court finding that the sign was still a lawful nonconforming sign under the Act. *Id.* at 1040, 1042.

11

¶ 25    We recognize that under the version of section 3.08 now in effect, the result of *Keller* would have been different. That is because the sign Keller put up after the windstorm used all new materials. *Id.* at 1040. Thus, under the current version of the statute, there is no question that Keller "replaced" more than 30% of its damaged metal uprights (see 225 ILCS 440/3.08 (West 2010)). However, it is in this respect that the two cases are factually distinguishable. Here, unlike there, the plaintiff re-erected its sign using all of the original materials. Thus, while the 2010 amendments would change the result of *Keller* on its own specific facts, we believe that our holding is still valid under the facts of this case.

¶ 26    We adhere to our observation in *Keller* that, as a general matter, it is "highly unlikely" that the legislature could have intended to allow owners of nonconforming signs to make repairs to signs that have been partially damaged due to neglect while prohibiting substantial repairs to signs that have been blown down in a windstorm through no fault of the owner. See *Keller*, 122 Ill. App. 3d at 1041. Such a result, under most circumstances, would be absurd. See *Solon*, 236 Ill. 2d at 441 (noting that we presume the legislature did not intend an absurd result). We recognize, however, that the legislature has explicitly limited the types of repairs that can be made to such signs. As we have discussed, the legislature clearly intended to preclude sign owners from doing anything that will "substantially change a sign or make a sign more valuable." 225 ILCS 440/3.08 (West 2010). This prohibition includes replacing more than 60% of the original wooden uprights with new material. *Id.* It does *not* include simply returning the sign to its original position with no alterations or enhancements.

¶ 27    This interpretation does not lead to an absurd result. It simply means that owners of nonconforming signs cannot effect repairs that significantly change or increase the value of their nonconforming signs without obtaining a permit and complying with other requirements of the

Act. It prevents sign owners from using repairs as an end-run around the Act's requirements for erecting new signs while allowing them to maintain nonconforming signs in essentially the same condition. By contrast, the interpretation urged by IDOT would allow a sign owner to repair a nonconforming sign that has been damaged due to the owner's negligence even if doing so required the owner to replace more than 50% of the upright posts with new material. However, the owner of a sign blown over in a windstorm through no fault of the owner would not be able to maintain the sign in exactly the same condition it was in before the storm. Such a result would be absurd, and it would not be necessary to prevent owners from using repairs as a means of changing or upgrading their signs. We therefore reject IDOT's contentions.

¶ 28    To sum up, we hold that the owner of a nonconforming sign does not "replace" more than 60% of the wooden uprights within the meaning of section 3.08 of the Act unless the uprights are replaced with new materials. As such, returning the original uprights to their original position constitutes "normal maintenance or repair" of the sign. See *id*. Under these principles, the plaintiff in this case did not "replace" its uprights within the meaning of the Act. It therefore performed "normal maintenance or repair" when it returned the original sign to its original location without substantially altering its condition. For these reasons, we conclude that the trial court properly entered summary judgment in favor of the plaintiff on count II of its complaint.

¶ 29    IDOT also argues that the court's grant of summary judgment to the plaintiff as to count I of its complaint, which sought relief related to eminent domain, was inappropriate because no taking actually occurred in this case. The plaintiff acknowledges that no taking occurred. It points out that counts I and II of its complaint were pled as alternative forms of relief. We agree with IDOT that summary judgment on count I of the plaintiff's complaint should be reversed. Because

13

the plaintiff prevailed on count II of its complaint, its request for relief based on principles of eminent domain is moot.

¶ 30 For the foregoing reasons, we affirm the portions of the trial court's judgment denying IDOT's motion for summary judgment in its entirety and granting summary judgment to the plaintiff on count II of its complaint. However, we reverse the portion of the judgment granting summary judgment to the plaintiff on count I.

¶ 31 Affirmed in part and reversed in part.

2019 IL App (5th) 180269

NO. 5-18-0269

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| DUSTY'S OUTDOOR MEDIA, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Fayette County. |
| | ) | |
| v. | ) | |
| | ) | |
| THE DEPARTMENT OF TRANSPORTATION; | ) | No. 13-CH-22 |
| RANDALL BLANKENHORN, Secretary of | ) | |
| Transportation; and LAURA MLACNIK, Department | ) | |
| of Transportation Bureau Chief of Land Acquisition, | ) | Honorable |
| | ) | Daniel E. Hartigan, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

**Opinion Filed:**      **September 16, 2019**

_____

| | |
|---|---|
| **Justices:** | Honorable Melissa A. Chapman, J. |
| | |
| | Honorable Thomas M. Welch, J., and |
| | Honorable Judy L. Cates, J. |
| | Concur |

_____

| | |
|---|---|
| **Attorneys for Appellants** | Kwame Raoul, Attorney General, State of Illinois, David L. Franklin, Solicitor General, Carl J. Elitz, Assistant Attorney General, 100 West Randolph Street, 12th Floor, Chicago, IL 60601 |

_____

| | |
|---|---|
| **Attorney for Appellee** | Chad E. Chojnicki, McDevitt, Osteen, Chojnicki & Deters, LLC, 127 West Jefferson Avenue, P.O. Box 507, Effingham, IL 62401 |

_____