NOTICE

Decision filed 02/25/21 The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2021 IL App (5th) 190371-U

NO. 5-19-0371

IN THE

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE CITY OF MADISON, ILLINOIS, a Municipal Corporation; MIKE FOLEY; and JACK McKINNEY, | ) ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 15-MR-129 |
| THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION; JAY STEWART, Director of the Division of Professional Regulation; and BRYAN A. SCHNEIDER, Secretary of Financial and Professional Regulation, | ) ) ) ) ) ) | |
| Defendants-Appellants. | ) ) ) | Honorable David W. Dugan, Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Cates and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The judgment of the circuit court of Madison County in favor of the plaintiffs is affirmed where the plain language of the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004 (225 ILCS 447/5-3 *et seq.* (West 2012)) reveals it does not apply to the plaintiffs' conduct of installing and maintaining alarm systems for its citizens.

¶ 2    This appeal arises from operations conducted by the plaintiffs, the City of Madison

(City), Mike Foley, and Jack McKinney, through which they install and maintain alarm

1

systems for the City's citizens. The defendants, the Illinois Department of Financial and Professional Regulation (Department); Jay Stewart, Director of the Department (Director); and Bryan A. Schneider, Secretary of Financial and Professional Regulation, appeal the order of the circuit court of Madison County that reversed the decision of the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Board (Board), which determined that the plaintiffs were engaged in the unlicensed practice of installing and maintaining alarm systems and ordered them to cease and desist such operations. For the reasons that follow, we agree with the court's determination that the Board's decision should be reversed and vacated.

¶ 3                          I. BACKGROUND

¶ 4     Under the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004 (Act) (225 ILCS 447/5-3 *et seq.* (West 2012)), private alarm contractor agencies and private alarm contractors must be licensed by the state. *Id*. §§ 20-10, 20-15. A "[p]rivate alarm contractor agency" is defined, in pertinent part, as "a person, corporation, or other entity that engages in the private alarm contracting business." *Id*. § 5-10. A "[p]rivate alarm contractor" is defined, in pertinent part, as "a person who engages in a business that *** undertakes *** to sell, install, design, monitor, maintain, alter, repair, replace, or service alarm and other security-related systems." *Id*.

¶ 5     The Act mandates several character and fitness requirements for contractors, including training requirements. *Id*. § 20-10. The Act states that these regulations are for protection of the public; that the practices regulated "are declared to affect the public

2

health, safety, and welfare"; and that the Act "shall be construed to carry out these purposes." *Id*. § 5-15.

¶ 6    The Illinois Municipal Code (Code) (65 ILCS 5/1-1-1 *et seq.* (West 2012)) addresses certain corporate functions of municipalities under article 11 "Corporate Powers and Functions." *Id*. art. 11.    Among these corporate functions is the permission to "establish and maintain for reasonable charges electrical appliances in public or private buildings for fire and police protection upon application of the custodian of public buildings, or of the owner of private buildings." *Id*. § 11-8-1.

¶ 7    Pursuant to this provision, the City contracts for the installation and monitoring of alarm systems to its residents for a fee.    The City is not licensed as a private alarm contractor agency under the Act, and Foley and McKinney are not licensed as private alarm contractors.

¶ 8    On October 24, 2012, the Department filed an administrative complaint against the City alleging unlicensed practice under the Act.    On December 12, 2012, the Department filed a similar administrative complaint against Foley and McKinney.    The complaints were subsequently consolidated.

¶ 9    In lieu of a formal administrative hearing before an administrative law judge (ALJ) for the Department, the parties agreed to a stipulated set of facts, which follow.    On September 28, 2011, the Department received a complaint from an Illinois resident that the City was holding itself out as an alarm company and was selling, installing, and monitoring alarm systems.    The complaint alleged that McKinney was involved in this process and

3

was not licensed. Attached to the complaint was a bill for three months of alarm services issued to an apartment complex in the City.

¶ 10    On October 3, 2011, a chief investigator with the Department, Richard Cauble, researched the City's website, which stated that Foley was the director of alarm department and director of public works. The website also stated that the alarm department maintained alarm and surveillance camera systems throughout the City and that Foley monitored alarms and cameras in conjunction with the Madison Police Department. Foley's business card identified him as the alarm director and public works director.

¶ 11    On October 18, 2011, Cauble conducted a telephone interview with the complainant, during which the complainant stated that McKinney performed installations and connected alarms for the police department. The complainant further related that he or she was charged $500 for the installation and monitoring of his or her alarm system.

¶ 12    Following the filing of the Department's complaints, the plaintiffs filed a motion to dismiss on March 5, 2013, arguing that (1) the Code allowed the City to operate its alarm systems and (2) the Act did not apply to municipalities. The ALJ denied the motion to dismiss.

¶ 13    Based on the stipulated facts and the parties' arguments, the ALJ issued a report and recommendation on November 21, 2014. The ALJ first noted that the intent of the Act was to provide protection to the public, explaining that the practices at issue (alarm systems, security, etc.) were declared by the General Assembly to affect the public health, safety, and welfare of citizens and that the Act stated that it should be construed to carry out these purposes. The ALJ further noted that the Code's language indicating that municipalities

4

"may establish and maintain for reasonable charges electrical appliances in public or private buildings for fire and police protection" (*id*.) meant that the City had the authority to contract for selling, installing, and monitoring alarm systems.

¶ 14 Although he concluded that the Code permitted the City to operate alarm systems, the ALJ rejected the plaintiffs' argument that the Act's licensing requirements did not apply to them. The ALJ noted that the Act did not expressly state whether municipalities authorized to operate alarm systems by the Code were exempt from or subject to its licensing requirements. However, the ALJ determined that the City qualified as a "private alarm contractor agency." Specifically, the ALJ found that the City, "in maintaining an Alarm Department, and employing Mr. Foley and Mr. McKinney to contract to install, maintain, monitor, and repair alarm systems, f[ell] within the definition." The ALJ further concluded that Foley, as head of the alarm department, and McKinney, as the technician installing, maintaining, and repairing alarm systems, fell within the plain meaning of "private alarm contractor."

¶ 15 The ALJ also rejected the City's argument that the Code and the Act were in conflict. The ALJ explained that the Code allows municipalities to contract for alarm systems, but the Act regulates such conduct.

¶ 16 Following the ALJ's report and recommendation, the Board adopted the findings and conclusions of the ALJ. The Board recommended that the plaintiffs be ordered to cease and desist from the unlicensed operation as a private alarm contractor agency and as private alarm contractors until such time as each had complied with the licensure requirements of the Act.

¶ 17    The plaintiffs subsequently filed a motion for rehearing and reconsideration of the findings of fact, conclusions of law, and recommendation.  The plaintiffs again asserted that the Act did not apply to municipalities and that there was a conflict between the Act and the Code.  In support of the argument that the Act did not apply to municipalities, the City cited *City of Calumet City v. Illinois Fraternal Order of Police Labor Council*, 344 Ill. App. 3d 1000, 1009 (2003), where, in rejecting an argument that the Act's requirements applied to Calumet, the reviewing court held that Calumet was not a "person, corporation, or firm."

¶ 18    On April 13, 2015, the Director entered a final order denying the City's motion for rehearing/reconsideration.  First, the Director noted that under the Code, a city is defined as a municipal corporation.  As such, the Act applied to the City.  The Director noted that part of the issue in the case, and one that the Department encounters, is the fact that governmental entities can engage in "historically private enterprise activities," and that this activity can be regulated by the Department unless an exemption applies.  However, the Director found that no such exemption applied to the plaintiffs' activities at issue.

¶ 19    The Director further concluded that the Act applied to governmental activities because its listed exemptions included certain governmental activities.  The Director noted that such exemptions for government activity would be unnecessary if government activity were exempt from the Act.

¶ 20    Following the Director's final order, the plaintiffs filed a complaint for administrative review in the circuit court of Madison County.  On July 30, 2019, the trial court entered an order reversing the Director's order of April 13, 2015, which adopted the

6

ALJ's report and recommendation and the Board's findings of fact, conclusions of law, and recommendations. The court's order also vacated the portion of the Director's order requiring the plaintiffs to "cease and desist the unlicensed practice of private alarm contractor agency and private alarm contractor." In its order, the court concluded that the Act did not apply to municipalities, citing the Act's repeated references to " 'private' entities and activities." The court determined that the plain language of the Act suggests that the General Assembly "was contemplating the Department's regulation of *private* business activities when it drafted and passed the legislation." (Emphasis in original.) The court further held that if the Act applied to municipalities, it would create a conflict with the Code, which allows municipalities to operate alarm systems.

¶ 21 The defendants subsequently filed a timely notice of appeal.

¶ 22                                  II. ANALYSIS

¶ 23 The sole issue on appeal is whether the plaintiffs' conduct of installing and maintaining alarm systems for the City's citizens is subject to regulation under the Act. In administrative cases, we review the administrative agency's decision rather than the determination made by the trial court. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). An issue involving statutory interpretation is a question of law subject to *de novo* review. *Gibbs v. Madison County Sheriff's Department*, 326 Ill. App. 3d 473, 475 (2001). The primary goal of statutory interpretation is to ascertain and give effect to the true intent of the legislature. *Id.* at 476. The best evidence of legislative intent is the language of the statute itself. *Id.* "When the language of a statute is clear and unambiguous, a court should not depart from the plain language of the statute

7

by reading into it exceptions, limitations, or conditions that the legislature did not express."
*Id.* Courts construe administrative rules and regulations under the same principles that govern the construction of statutes. *Monarch Gas Co. v. Illinois Commerce Comm'n*, 261 Ill. App. 3d 94, 98 (1994).

¶ 24 Here, the language of the regulation is clear: the Act applies only to private entities. The term "private" is not only present in the title of the Act, but it is repeated consistently throughout its provisions. See 225 ILCS 447/5-3 *et seq.* (West 2012). The provisions specifically at issue in this case expressly state that they apply to "private alarm contractor agenc[ies]" and "private alarm contractor[s]." *Id.* §§ 20-10, 20-15. Moreover, the definition of a "private alarm contractor agency" limits its application to persons, corporations, or entities that are engaged "in the private alarm contracting business." *Id.* § 5-10. Although the term "private" is not used in the definition of a "private alarm contractor," the definition is limited to "person[s] who engage[ ] in a business" of, *inter alia*, selling, installing, and maintaining alarm systems. *Id.*

¶ 25 Although the Act does not define the term "private," we may look to dictionary definitions in ascertaining the meaning of an otherwise undefined word or phrase. *Poris v. Lake Holiday Property Owners Ass'n*, 2013 IL 113907, ¶ 48. Black's Law Dictionary defines "private" as "[r]elating or belonging to an individual, as opposed to the public or the government." Black's Law Dictionary 1213 (7th ed. 1999). Similarly, Webster's Third New International Dictionary definition of "private" states in relevant part:

> "intended for or restricted to the use of a particular person or group or class of persons : not freely available to the public *** b : belonging to or concerning an

8

individual person, company or interest." Webster's Third New International Dictionary 1804-05 (1976).

In light of the preceding consistent definitions of the term "private," we find the plain and ordinary meaning is clear. The Act is intended to regulate private individuals, corporations, or other entities engaging in the business of, *inter alia*, selling, installing, and maintaining private alarm systems and other security related systems. In contrast, the Act is not intended to regulate services offered by governmental entities to the public.

¶ 26 Additionally, in support of this court's interpretation of the Act, section 20-10 of the Act, which lists the qualifications for licensure as a private alarm contractor, draws a distinction between private and government entities. See 225 ILCS 447/20-10(a)(6)(ii) (West 2012). In discussing the necessary experience for licensure, the Act requires "a minimum of 3 years experience during the 5 years immediately preceding the application *** (ii) working for a government or private entity that inspects, reviews, designs, sells, installs, operates, services, or monitors alarm systems." *Id.* We find this notable because if, as the defendants suggest, the General Assembly had intended to conflate governmental and private entities throughout the Act, such a distinction would have been unnecessary.

¶ 27 We acknowledge that the defendants have presented a compelling argument on appeal in support of their interpretation of the Act. However, the argument is based on rules of statutory construction, which do not become relevant unless the language of the Act is ambiguous. *Barrall v. Board of Trustees of John A. Logan Community College*, 2019 IL App (5th) 180284, ¶ 10. In this case, we have found that the Act's language is clear and unambiguous, and, as a result, we do not need to resort to the rules of statutory

9

construction. We similarly disagree with the defendants' assertion that we must defer to the Board or the Director, as the agency charged with enforcing the Act, as to the interpretation of its provisions. This rule only applies when a statute is ambiguous. *Dusty's Outdoor Media, LLC v. Department of Transportation*, 2019 IL App (5th) 180269, ¶ 11. Moreover, the interpretation of the agency is relevant, but it is not binding on this court. *Id*.

¶ 28    Based on the foregoing, we find the plain language of the Act indicates that it is not intended to regulate the conduct of the plaintiffs, a municipality and its employees. To adopt the defendants' position would be to depart from the plain language of the Act and read into it a condition that the legislature did not express, which we cannot do. *Gibbs*, 326 Ill. App. 3d at 475. Accordingly, the plaintiffs are not subject to the Act's licensure requirements.

¶ 29                                III. CONCLUSION

¶ 30    For the foregoing reasons, we reverse the decision of the Board and affirm the judgment of the circuit court of Madison County.


¶ 31    Circuit court judgment affirmed; Board decision reversed.

10